CENTRAL R. CO. OF NEW JERSEY v. DE BUSLEY.

(Circuit Court of Appeals, Third Circuit.    December 2, 1919.)

No. 2458.

1. MASTER AND SERVANT ☞301(4)—LIABILITY FOR ACTS OF SERVANT CONTROLLED BY THIRD PERSON.

Whether employés are to be deemed pro hac vice servants of a third person, for whom they are performing services, depends upon whether they are under the exclusive control and direction of such third person, and, if not, such third person is not deemed pro hac vice the master, so as to free the employer from liability for the negligence of such employés.

2. RAILROADS ☞260—LIABILITY OF RAILROAD COMPANY PERMITTING USE OF ITS TRACKS BY ANOTHER COMPANY.

In an action for the death of a freight conductor, who was struck and killed by defendant's locomotive, operated by its servants over the tracks of another company, etc., *held* that, under the evidence, the engineer and fireman operating the locomotive could not be deemed servants pro hac vice of the latter company.

3. MASTER AND SERVANT ☞330(1)—BURDEN OF PROVING THAT EMPLOYÉ IS SERVANT OF THIRD PERSON.

A general master, who seeks to avoid liability for the negligence of his servants on the ground that they were pro hac vice servants of another, has the burden of establishing the new relation.

4. APPEAL AND ERROR ☞1033(4)—HARMLESS ERROR IN SUBMITTING QUESTION TO JURY.

Where the evidence would have warranted the trial court in charging that employés of defendant in charge of an engine proceeding over the tracks of a second company had not become servants pro hac vice of the second company, defendant cannot complain that the question was submitted to the jury, which found against that contention.

5. NEGLIGENCE ☞136(9)—INFERENCES FROM EVIDENCE AS MATTER FOR JURY.

Where the uncertainty as to the existence or nonexistence of negligence or contributory negligence, or both, whether such uncertainty arises from a conflict in the evidence, or because fair-minded and reasonable men might honestly draw different conclusions from the evidence, if undisputed, the questions are primarily for the jury, and it is permissible for the court to give binding instructions only when the facts are such that all reasonable men must draw the same conclusions therefrom.

6. RAILROADS ☞400(6)—TRACK ACCIDENTS; NEGLIGENCE AS TO SIGNALS, ETC., AS JURY QUESTION.

In an action for the death of a freight conductor, who was struck by defendant's locomotive, which was proceeding over tracks of a second company, the employer of the conductor, while he was standing near the tracks in connection with his duties, the question of the negligence of defendant's servants in charge of the engine, who gave no effective signals, etc., *held* for the jury.

7. NEGLIGENCE ☞70—CONTRIBUTORY NEGLIGENCE; ANTICIPATION OF NEGLIGENCE OF OTHERS.

One cannot be held guilty of contributory negligence solely because he did not anticipate a neglect of duty which others owed him.

8. RAILROADS ☞400(12)—CONTRIBUTORY NEGLIGENCE IN FAILING TO KEEP LOOKOUT AS JURY QUESTION.

In an action for the death of a freight conductor, who was struck by defendant's locomotive which was proceeding over the tracks of a second company, the employer of the conductor, while he was standing near the

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes
261 F.—36

tracks in the course of his duties, though it appeared that he did not keep a lookout in the direction from which defendant's locomotive came, the question of his contributory negligence *held* for the jury.

In Error to the District Court of the United States for the Eastern District of Pennsylvania; Oliver B. Dickinson, Judge.

Action by Mary De Busley against the Central Railroad Company of New Jersey. There was a judgment for plaintiff, and defendant brings error. Affirmed.

Arthur G. Dickson, of Philadelphia, Pa., for plaintiff in error.

Lincoln L. Eyre, of Philadelphia, Pa., for defendant in error.

Before BUFFINGTON, WOOLLEY, and HAIGHT, Circuit Judges.

HAIGHT, Circuit Judge. The defendant in error, who is the widow of one John A. De Busley, deceased, brought suit in the court below against the plaintiff in error, and recovered a judgment for the damages which she and two minor children suffered by reason of the death of her husband. He was killed, under the circumstances hereinafter detailed, by an engine belonging to and under the control of a crew in the general employ of the plaintiff in error. The action is based upon the alleged negligence of the crew in the operation of the engine. De Busley, at the time of the accident, was in the employ of the Baltimore & Ohio Railroad Company and acting as a freight train conductor. While performing his duties as such, and in the course of directing the making up of a train on one of the tracks of that company at the Cherry street crossing, in the city of Philadelphia, he was struck by the defendant's engine, which was running on an adjoining track. At the place of the accident there are four tracks running parallel with the Schuylkill river and in a general north and south direction, but called by railroad men east-bound and west-bound tracks. At that point they are on a curve, described by some witnesses as sharp and by others as gradual. The two outside tracks are sidings or auxiliaries, and the two inside tracks are the main tracks, constantly used by passing trains.

De Busley's train, consisting of about eight cars, was being made up on the east-bound main track—the third track from the river. The engine and one or two cars were east of the Cherry street crossing, and the other cars were west of it. De Busley was standing, as was also one of his brakemen, in the space between the east and west bound main tracks, and, as respects the east-bound main track, he was on the inside of the curve. At the time he was struck, he was looking towards the rear of his train in order to catch a signal from one of his brakemen, who was engaged in making a coupling of one or more cars, so that he could in turn signal the engineer to start the train as soon as the coupling had been made. While thus engaged, the defendant's engine came around the curve on the west-bound track at a speed of from 10 to 15 miles per hour, and struck De Busley, inflicting the injuries from which he died. The engine, which was on its way to the Baltimore & Ohio station at Twenty-Fourth and Chestnut streets,

Philadelphia, for the purpose of hauling a passenger train from that point to Jersey City, was running backwards and was manned by an engineer and a fireman, both of whom were, at the time of the accident, in the cab.

The accident happened at about 10:20 in the morning of a clear day. The train that the engine was to haul to Jersey City was due to leave the Chestnut street station at 10:40 a. m. over the track occupied by De Busley's train. The only signal given of the approach of the engine was the ringing of a bell; but, so far as warning De Busley and the members of his crew of the approach of the engine, the bell was of very little, if any, use, because of the fact that an automatic gong located at the Cherry street crossing was continually ringing, owing to the fact that De Busley's train was standing there. The engineer, by reason of his position in the cab and the curve of the track, was unable to see ahead of his engine that part of the track where De Busley was standing. It was possible for the jury to find that the fireman could have seen the track and De Busley, had he looked out of the cab window. He, however, did not do so. It was also quite permissible for the jury to decline to accept the reason which he gave as to why, as he said, he could not do so. The brakeman, standing quite near to De Busley, was nearly struck by the engine, and none of the members of De Busley's crew were aware of its approach until it was directly upon them.

Under this general state of facts, the learned trial judge submitted the question of the defendant's negligence and of De Busley's contributory negligence to the jury, with clear and appropriate instructions. The defendant having raised a question as to the responsibility of the defendant for the acts of the crew of the engine on the ground, as it is claimed, that at the time of the accident they were pro hac vice in the employ of the Baltimore & Ohio Railroad, and not the defendant, that question was likewise submitted to the jury.

The assignments of error which need more than passing reference present three main questions, as follows: (1) Did the evidence justify the jury in finding that the crew of the engine which caused De Busley's death were, at the time of the accident, employés of the defendant in the sense that the latter was responsible for their negligence, if any there was? (2) Was there any evidence to justify a finding that there was negligence on the part of the crew of the engine? And (3) should the court have directed a verdict for the defendant on the ground that De Busley was guilty of contributory negligence? These three points will be discussed in the order in which they are stated.

[1-4] 1. In addition to the fact that the engine was the property of the defendant, and that the crew were in its general employ and received their wages and general instructions from the defendant, the evidence was that on the morning of the accident they had hauled a train from Jersey City to the Philadelphia & Reading terminal in Philadelphia, partly over the tracks of the defendant and partly over the tracks of the Philadelphia & Reading; that after reaching the terminal of the latter, pursuant to orders apparently received before that time,

the crew had taken the engine to the roundhouse of the Philadelphia & Reading at Twentieth and Hamilton streets, where it had been turned around on a turntable; and that they had then backed it over the tracks of the Baltimore & Ohio to the Twenty-Fourth and Chestnut street station of that company, from which point they were to haul a train from Philadelphia to Jersey City over the same route that they had traversed earlier in the morning. While they were on the tracks of the Baltimore & Ohio, they were subject to its ordinary track rules, signals, and directions, and as to speed they were subject, in certain cases, to the time-tables issued by that company. The defendant was paid by the Philadelphia & Reading for the service rendered by the engine and crew in hauling the before-mentioned train from the Baltimore & Ohio station in Philadelphia.

It appears from the bill which was presented therefor that the service was rendered pursuant to an agreement dated October 1, 1910. This agreement, however, was not offered in evidence, nor any explanation made of its terms; nor was there any evidence of the exact arrangement which the defendant and the Baltimore & Ohio or the Philadelphia & Reading had in respect to the use of engines and employés of the defendant. It does appear, however, that the Baltimore & Ohio exercised no disciplinary jurisdiction over the defendant's employés when operating the latter's engines over the former's tracks, except an advisory one. As to when one in the general employ of another is pro hac vice the servant of a third, so as to make the latter and not the general employer responsible for the employé's act, has been the subject of prolific discussion in the courts, and the decisions cannot always be reconciled. Fortunately the whole subject has been very fully considered by the Supreme Court of the United States in Standard Oil Co. v. Anderson, 212 U. S. 215, 221, 29 Sup. Ct. 252, 254 (53 L. Ed. 480), and the rule is there very lucidly stated by Mr. Justice Moody as follows:

"It sometimes happens that one wishes a certain work to be done for his benefit, and neither has persons in his employ who can do it nor is willing to take such persons into his general service. He may then enter into an agreement with another. If that other furnishes him with men to do the work, and places them under his exclusive control in the performance of it, those men become pro hac vice the servants of him to whom they are furnished. But, on the other hand, one may prefer to enter into an agreement with another that that other, for a consideration, shall himself perform the work through servants of his own selection, retaining the direction and control of them. In the first case, he to whom the workmen are furnished is responsible for their negligence in the conduct of the work, because the work is his work and they are for the time his workmen. In the second case, he who agrees to furnish the completed work through servants over whom he retains control is responsible for their negligence in the conduct of it, because, though it is done for the ultimate benefit of the other, it is still in its doing his own work. To determine whether a given case falls within the one class or the other, we must inquire whose is the work being performed, a question which is usually answered by ascertaining who has the power to control and direct the servants in the performance of their work. Here we must carefully distinguish between authoritative direction and control, and mere suggestion as to details or the necessary co-operation, where the work furnished is part of a larger undertaking."

In the application of the rule to the facts of that case, after observing that the employé whose negligence caused the accident in that case was in the general employ of the defendant, who selected him, paid his wages, and had the right to discharge him, Mr. Justice Moody further said (221 U. S. 225, 29 Sup. Ct. 255, 53 L. Ed. 480):

"In order to relieve the defendant from the results of the legal relation of master and servant, it must appear that that relation, for the time, had been suspended and a new like relation between the winchman [employé] and the stevedore [the person who had the general contract for doing the work] had been created."

Applying the tests of the foregoing rules to the facts in this case, we are unable to find any evidence that the relation of master and servant which existed between the defendant and the crew of the engine had been suspended for the time being, and a new relation created between the latter and the Baltimore & Ohio Railroad Company. The utmost that can be said for the evidence on this point is that it showed that, at the time of the accident, the defendant's engine was proceeding over the Baltimore & Ohio tracks for the ultimate purpose of drawing a train from Philadelphia to Jersey City, partly over the tracks of that company, partly over the tracks of the Philadelphia & Reading, and partly over the tracks of the defendant; that this service was being undertaken by the defendant pursuant to an agreement between the Philadelphia & Reading and the defendant, which agreement was not offered in evidence nor the terms thereof divulged, although it was in the control of the defendant; and that the only directions of the Baltimore & Ohio Railroad to which the crew of the engine were subject were the usual track signals, rules, and directions, and time-tables.

As observed in the Anderson Case, the duty of the crew to conform to such track signals, etc., showed "co-operation rather than subordination." It was, of course, necessary for any one using the tracks of the Baltimore & Ohio to be governed by their time-tables and track regulations; otherwise, endless confusion and extremely serious accidents would in all probability occur. The obedience to such signals and rules was evidence of necessary co-operation between those using the tracks and those responsible for the direction of trains thereon, and not evidence of authoritative direction and control of the Baltimore & Ohio over the crew of the engine. The burden of establishing the alleged new relation rested upon the defendant, and the evidence to sustain that burden was peculiarly within its control. As it failed to produce any evidence to sustain such burden, it follows that the jury would not have been justified in finding as a fact that the general relation of master and servant which existed between the crew and the defendant had been suspended and superseded, and that, at the time of the accident, a new like relation existed between the crew and the Baltimore & Ohio Railroad. The trial judge would therefore have been justified in giving to the jury binding instructions on this point. Hence he committed no error in declining to charge any of the defendant's requests on this point; nor was there any error, of which

the defendant can complain, in submitting to the jury, as a question of fact, whose servants the crew were at the time of the accident.

[5, 6] 2. In approaching the decision of the question as to whether a verdict should have been directed for the defendant, on the ground that the evidence was not sufficient to justify a finding that there was negligence on the part of the crew of the engine, as well as the kindred question of whether the court should have given binding instructions to the jury that De Busley was guilty of contributory negligence, we are, of course, to be guided by the well-settled rule that, where there is uncertainty as to the existence or nonexistence of negligence or contributory negligence, or both, whether such uncertainty arises from a conflict in the evidence or because, the facts being undisputed, fair-minded and reasonable men might honestly draw different conclusions therefrom, the questions are primarily for the jury, and that it is permissible for a court to give binding instructions only when the facts are such that all reasonable men must draw the same conclusions from them. Grand Trunk Railway v. Ives, 144 U. S. 408, 417, 12 Sup. Ct. 679, 36 L. Ed. 485; Texas & Pacific Railway v. Harvey, 228 U. S. 319, 324, 33 Sup. Ct. 518, 57 L. Ed. 852; Pennsylvania Railroad Co. v. Rogers, 244 Fed. 76, 78, 156 C. C. A. 504 (C. C. A. 3d Cir.).

From the foregoing recital of facts, it will be observed that the evidence developed that the crew of the defendant's engine, at the time of the accident, were engaged in backing the engine around a curve, in a place where trainmen were continually engaged in making up and moving trains, and whose presence there was, consequently, reasonably to be anticipated, at a speed of from 10 to 15 miles per hour, and without giving any signal or warning of its approach save the ringing of a bell, the sound of which was largely, if not wholly, drowned by the ringing of the automatic gong at a public crossing, and *without keeping any lookout whatsoever*. Applying the above-stated rule of law to these circumstances, we are convinced that, although the facts were undisputed, the question as to whether or not there was negligence on the part of the crew of the defendant's engine was peculiarly for the jury, and that the trial court committed no error in so treating it.

[7, 8] 3. The solution of the question as to whether De Busley was guilty of contributory negligence is, of course, very largely, if not wholly, dependent upon the dangers which he might reasonably anticipate at the place where he was working, the nature of the duties which he was required to perform there, and the precautions which he could reasonably have taken for his own protection. Looking at the evidence in the light most favorable to the plaintiff, as we are of course compelled to do, it appears that it was necessary for him to get his train off of the main track speedily, and, in order to catch the expected signal from his brakeman and transmit it to his engineer, to stand in the space between the east and west bound tracks; that to catch the signal he was obliged, for a part of the time, at least, to keep his eyes fixed in the direction opposite to that from which the engine which struck him was approaching; and that, taking into account the overhang of the cars on the east-bound track and of the engine on the

west-bound track, the space which he could occupy between the tracks and be free from the danger of being struck by the latter was from two to three feet. This space was so small and constricted that one intending to stand and remain within it might readily, in attending to his own duties, unconsciously step within the danger zone. Although he was in a dangerous place, his duties required him to be there, and he had every right to expect that some lookout would be maintained on an engine approaching that place, and an effective warning given to him of its approach, if he was in a place of imminent danger. He cannot be held guilty of contributory negligence solely because he did not anticipate a neglect of the duty which the defendant's employés owed him. Kelly v. Pennsylvania Railroad, 264 Pa. 426, 107 Atl. 780. Under these circumstances, although there were several conceivable precautions which De Busley could have taken for his own safety, and which he did not take, we do not feel that we would be justified in concluding that all reasonable and fair-minded men would say that De Busley had failed to exercise that degree of care for his own safety which the law requires.

4. The remaining assignments of error, which are not embraced within the questions just discussed, deal with the failure of the trial judge to charge some of the defendant's requests or points of instruction to the jury. We have carefully examined all of the assignments, and find that some of them were sufficiently covered in the main charge of the trial judge, and that the others called for instructions on segregated facts, which the trial judge in his discretion was at liberty to refuse to give. None of the requests in this latter category asked for an instruction in regard to a fact the existence or nonexistence of which would necessarily be decisive of the case.

Finding no error in the record, the judgment is affirmed.