**STEINMAN v. PENNSYLVANIA R. CO. et al.**

**No. 4593.**

Circuit Court of Appeals, Third Circuit.

Jan. 6, 1932.

Archie Elkins, of Jersey City, N. J. (Joseph Coult, of Newark, N. J., of counsel), for appellant.

Harry Lane' and Robert Carey, both of Jersey City, N. J., for appellees.

Before BUFFINGTON, WOOLLEY, and DAVIS, Circuit Judges.

WOOLLEY, Circuit Judge.

The New York Foundation Company was under contract with the Pennsylvania Railroad Company to make rock-bottom foundations for piers of a bridge to be built across the Hackensack River. All materials were to be furnished and the entire work was to be done by the Foundation Company. This included the highly specialized work of making and sinking caissons, building scaffolding, mixing concrete and putting it in place, and operating in part under compressed air, all, however, under the supervision and inspection of the Railroad Company's engineers and inspectors to insure that the construction should be carried on and completed in the way intended by the contract. In the course of the operation a rigger or scaffold builder in the employ of the Foundation Company so laid a runway that it broke, thereby causing another of its employees to fall and sustain injuries. The injured man sued the Railroad Company and from a judgment of nonsuit has taken this appeal.

■ The relation of the Foundation Company (the contractor) to the Railroad Company (the contractee) was that of an independent contractor. The plaintiff, conceding this relation, (Casement v. Brown, 148 U. S. 615, 13 S. Ct. 672, 37 L. Ed. 582; Singer Mfg. Co. v. Rahn, 132 U. S. 518, 10 S. Ct. 175, 33 L. Ed. 440), recognized the general rule of law that when work is being done by an independent contractor, employing and exercising an independent control over his own servants, and injury results to one from the negligence of another, the contractor alone is liable, Cuff v. N. & N. Y. R. R. Co., 35 N. J. Law, 17, 10 Am. Rep. 205. But he insisted that this case falls within the exception to that rule which regards a servant employed by one person as the servant pro hac vice of another person and makes the latter liable for injuries involving his negligence and resulting from his act of interfering with the servant's original employment and assuming control and direction of his work. Central Railway Co. v. DeBusley (C. C. A.) 261 F. 561; Standard Oil Co. v. Anderson, 212 U. S. 215, 221, 29 S. Ct. 252, 254, 53 L. Ed. 480. And so the injured employee of the contractor brought this suit against the contractee, averring a new relation between himself and the contractee by reason of its interference with his regular work and charging it with negligence. It was because the judge was unable to find this relation between the plaintiff and the defendant that he entered judgment of nonsuit on the two lines of evidence introduced by the plaintiff to support his two theories of recovery.

■ One theory of the plaintiff's case was that the Railroad Company, through its inspectors, so generally and persistently interfered with the employees of the contractor in their work that the independent quality of the contractor's relation to the contractee was destroyed, or, stated differently, that from the very beginning the contractee, through its inspectors, so interfered with and controlled the work of the contractor's servants that the contractor's position of master disappeared and its servants became generally the servants of the contractee. While there is much testimony bearing on actions of the Railroad Company's inspectors with reference to the work as it progressed through the months, which the plaintiff terms interference, they arose mainly if not entirely out of the inspectors' duty and right under the contract to inspect materials and workmanship and in most instances had to do with concrete mixtures,—the proportion of cement and the degree of moisture,—matters vital to foundation construction and peculiarly subject to inspection and correction under the contract. We hold without going into details that the evidence of general conduct of the inspectors in the assertion of their right to inspect does not prove interference and therefore does not show a change in the character of the independent contractor or a change of masters.

The plaintiff's other theory of recovery arises out of an alleged interference by one of the contractee's inspectors with one of the contractor's workmen on the occasion of the injury.

Dingsor, an employee of the contractor, was a skilled rigger. He was required among other things to build scaffolding and lay runways. While walking from one place to another on the premises Dingsor, according to his testimony, met Earl, the contractee's inspector, who, joining him, asked if he was making a certain caisson (about two hundred feet away) ready by laying a runway and complained that the job was being delayed. Dingsor replied that he did not have the proper scaffolding planks; that the only planking near at hand was 2x10x16 although there was an abundance of 4x10 a thousand feet away; that the nearby light planking was secondhand and contained knots and grains; and that Earl told him to get the scaffold ready and to use the 2x10x16 planks. Thereupon Earl departed, and Dingsor, proceeding to the place in question, picked up two of the light planks, laid them as a ten-foot runway from a platform which was built around one caisson to a similar platform built around the next caisson by means of which workmen could walk from one to the other. He tested the strength of the two-plank runway by walking across and returning. Later the plaintiff, a fellow-workman, started across when one plank broke causing him to fall and sustain the injuries of which he complains.

■ Whether this constituted interference with the work of the contractor's servant so as to make him the servant of the contractee must be determined by the tests which the law provides in such a case. The mere fact that Dingsor, servant of the contractor, was sent to do work pointed out to him by Earl, servant of the contractee, does not make him the contractee's servant; "more than that is necessary to take him out of the relation established by the only contract which he has made and to make him a voluntary subject of a new sovereign—as the master sometimes was called in the old books." Driscoll v. Towle, 181 Mass. 416, 63 N. E. 922. This

something more than mere direction is, as stated by the authorities, the assumption by one party to a contract to do work through a servant of the other party. Whether there is such assumption and change of masters and a corresponding change of liability depends upon whose work is being performed, "a question which is usually answered by ascertaining who has the power to control and direct the servants in the performance of their work," Fuller Co. v. McClosky, 228 U. S. 194, 33 S. Ct. 471, 57 L. Ed. 795; Central Railway Company v. DeBusley (C. C. A.) 261 F. 561, 564; Hawke v. Brown, 28 App. Div. 37, 50 N. Y. S. 1032–36; 39 C. J. § 1650; carefully distinguishing "between authoritative direction and control, and mere suggestion as to details or the necessary cooperation, where the work furnished is a part of a larger undertaking." Standard Oil Company v. Anderson, 212 U. S. 215, 221, 222, 29 S. Ct. 252, 254, 53 L. Ed. 480. Power of direction and control remain in the original master so long as he "retains the right to direct the manner in which the business shall be done, as well as the result to be accomplished, or, in other words, 'not only what shall be done, but how it shall be done,'" Railroad Company v. Hanning, 15 Wall. 649, 656, 21 L. Ed. 220; Painter v. Mayor, 46 Pa. 213; Singer Mfg. Co. v. Rahn, 132 U. S. 518, 523, 10 S. Ct. 175, 176, 33 L. Ed. 440. But when another assumes the power to control and direct the servant of the original employer to do certain work which may be within the scope of his employment and to do it by the method or in the manner he shall prescribe, he assumes control over the servant and substitutes his authority for that of the original master and is liable for his own negligence. 39 C. J. §§ 151, 1560; 44 A. L. R. 967, § 10. Recognizing the distinction which the law makes between supervision, co-operation and subordination, we shall, looking at the facts, inquire who was Dingsor's master at the very time of the negligent act complained of?

■ Laying the runway was work which the contractor had undertaken and was unquestionably within the scope of its servant's employment. Therefore the inspector of the contractee in directing him to lay the runway did not take the servant from his regular work and set him to an outside task. He told him to do nothing more than he should do for his own master, but to do it promptly. The direction was not compulsory upon Dingsor for it was given by one who had no power to control him in its observance or discharge him for disobedience. The direction, on first appearance, was purely supervisory, having for its object the co-ordination of the work in the interest of speed. Having been directed to do a thing within the scope of his employment—"get the scaffold ready"—Dingsor could and should have selected planks adequate for the purpose in number and strength. Many thick ones were available a short distance away, and many thin ones were lying all about. If he had done this there would have been no case, and, indeed, there is at present little in the case except for Dingsor's testimony that Earl told him to use the 2x10 planks. Assuming this to be true, Earl and Dingsor separated after their conversation. Earl went about some other business and Dingsor, without further direction from Earl, set about the work of laying the runway, which was peculiarly that of his original master, the contractor. He was bound to do it in a workmanlike way with regard to the safety of his fellow-employees. Earl had not told him how to do it; being hired for his skill, he was supposed to know. Earl did not tell him how many of the 2x10 planks to use, whether two side by side or four, with two side by side and two on top to stiffen the bridge. Nor did he otherwise indicate the manner in which the work should be done. All this was left to Dingsor's judgment and skill, for he was doing what the contractor had hired him to do. When he selected two, and only two, of the 2x10 planks out of all of that size immediately available and laid the runway, we hold that he was working under his contract of hire with the contractor and that accordingly the contractor was at that time his master, and was liable for his negligence, if any he committed. It follows by the same reasoning that Dingsor was not the servant pro hac vice of the defendant.

Even so, the plaintiff contends that the defendant was also negligent in directing, through its inspector, the use of the planks described, and for that negligence it is liable. He bases this contention on the principle that the law refuses to measure degrees of negligence between joint tortfeasors, and urges, accordingly, that where injuries are sustained by the servant of an independent contractor through the combined fault of the contractor and contractee, the contractee will be liable. Newman v. Fowler, 37 N. J. Law, 89; Cramblitt v. Percival-Porter Co., 162 Iowa, 283, 144 N. W. 23; 39 C. J. § 1559; 30 A. L. R. 1508.

There is no question about this law but we see trouble in invoking it and applying it. We cannot find that the plaintiff invoked it in

resisting the nonsuit or that at any time or in any way urged it upon the court, or that the judge considered it openly or silently, or that exception was allowed and error specifically assigned for what the judge did or did not do about it. Moreover, in making a trial application of the law, we find the case immediately springs back to the evidence already discussed which, viewed as true and not in conflict and therefore in the plaintiff's favor, would only sustain a finding by a jury that the negligence of the contractor's servant was the sole proximate cause of the injury.

The judgment of nonsuit is affirmed.