256

## LION OIL REFINING CO. v. LAWRENCE.

Circuit Court of Appeals, Eighth Circuit.
January 8, 1930.

No. 8637.

Thomas S. Buzbee, George B. Pugh, and H. T. Harrison, all of Little Rock, Ark., and John M. Shackleford and Mahony, Yocum & Saye, all of El Dorado, Ark., for appellant.

Before VAN VALKENBURGH and BOOTH, Circuit Judges, and DEWEY, District Judge.

VAN VALKENBURGH, Circuit Judge. The appellant is a Delaware corporation engaged in the business of refining and selling petroleum products, with its principal place of business at El Dorado, Ark. It operates pipe lines for the purpose of conveying oil from the wells or storage containers to its refinery, and employs men to construct and maintain these pipe lines. It was the practice of appellant to convey such employees from El Dorado to their place of work by means of a truck which it kept for that and other purposes. November 22, 1928, appellant's truck had broken down and was laid up for repairs. It became necessary to hire a truck to supply its place. The Black Ice & Delivery Company had trucks for hire and were engaged in what is termed a "general hauling business" in the city of El Dorado. Appellant had theretofore found it necessa-

ry to apply to this company, at times, when appellant's own truck was temporarily out of commission. The Black Company had been thus occasionally employed to haul men and tools to places designated by appellant. With respect to the hiring under consideration appellant's superintendent Brady testified as follows:

"Q. Did you yourself arrange with the Black Ice & Delivery Co. for that truck? A. I did.

"Q. State what arrangements you made? A. Our truck was broken down. We wanted to send some men to the East field. Some time about ten o'clock at night I called the Black Ice & Delivery Company and asked them if they had a truck they could send some men to the field in the morning. They told me they did. I told them to have it at the Lion filling station between 6:30 and 7:00 in the morning. That was all the conversation we had.

"Q. How did you pay them for it? A. By the hour.

"Q. Whom did you pay? A. Black Ice, —they billed us for it.

"Q. They just merely furnished a truck and driver? A. Yes, sir.

"Q. Did you undertake to have anything to do with the driver? A. We had nothing to do with the driver. I just considered the driver a part of the truck."

J. G. Oliver, a foreman in the employ of appellant, testified thus:

"Q. Whose truck was this? A. Black Ice truck.

"Q. Black Ice & Delivery Company? A. Yes, sir.

"Q. What is the Black Ice & Delivery Company? A. They had trucks to hire. We had used those trucks at times when we would have to have a truck or something to haul the men to and from work.

"Q. You mean a company here in El Dorado that hired out trucks, or hired trucks, I mean? A. Yes, sir, you could hire trucks from them. I don't know what they gave them, but we hired them whenever we needed one.

"Q. It is a company that does hauling in the City of El Dorado? A. Yes, sir."

This quoted testimony of the representatives of appellant reflects the nature of the relationship existing between the Lion Company and the Black Ice & Delivery Company as disclosed by the record. On the morning in question, as directed, a Black Ice & Deliv-

ery truck with its driver, and with a trailer attached, appeared at the place of business of appellant in El Dorado where the men were assembled for transportation to the East field. Appellee was among the number. With others he boarded the trailer. Mr. Jones, a representative of appellant, took his seat by the driver for the purpose of directing the latter with respect to the direction to be taken in reaching their destination. The testimony of appellee is that Jones told the driver to turn at Elm street in the city. In so doing, the trailer was overturned and appellee was injured. The negligence assigned is that the driver of the truck operated it and turned the corner at such a high and dangerous rate of speed and in such a careless and negligent manner that the trailer attached thereto was turned completely over, and the injury complained of resulted. The contention of appellee was and is that this driver was the servant and employee of appellant. The trial court so held and so charged the jury. To this an exception was preserved and this is the substantial error assigned.

The rule which has especial application to this case is admirably stated by the late Judge Sanborn in his concurring opinion in Philadelphia & R. Coal & Iron Co. v. Barrie (C. C. A.) 179 F. 50, 54:

"When a master who has and exercises the power to hire and discharge his servant lets him and a team to a hirer, to go where and to do such known work as the hirer directs, the legal presumption is that, although the hirer directs the servant where to go and what to carry, or haul, or do, the driver still remains subject to the control of his general employer in the method of his performance of the work to which the hirer assigns him, and the hirer is not liable, in the absence of an agreement to the contrary for the negligence of the servant in the method or manner of his performance of his service." Citing many cases.

In that case, however, the hirer was held bound by the negligence of a driver hired from another dealer upon the distinct ground that the driver was engaged in the affairs of the former. In that case the defendant was a coal dealer. It hired from another dealer a team and a driver in the latter's general employ for the purpose of delivering coal from its yards to its customers. The hirer paid a stipulated sum per hour for the services of team and driver and had full control and direction of the work and the method of its performance. The driver in that case not only received from the hirer direction from which of its yards the coal should be taken, the quantity, and place of delivery, but also, upon arrival, unloaded the coal by shoveling it from the wagon into the coal holes in the sidewalk or otherwise placed it in the receptacle provided by the consumer. In short, the defendant company issued all orders to the driver in connection with the delivery of coal to purchasers in various parts of the city. The employment was of a continuous nature and involved the performance of every kind of service incidental to the delivery of coal in the business of the hirer. In doing this work the driver apparently had left uncovered and unguarded a coal hole in the sidewalk through which he had been delivering coal. A customer of the store, to which the coal was being delivered, on leaving the store fell into this hole and was injured. Because of the negligence of the driver the Philadelphia & R. Coal & Iron Company, which had hired him, was held responsible. Further in his concurring opinion Judge Sanborn says:

"If, therefore, the proof in this case stopped with testimony that the Coal & Iron Company under its hiring had and exercised the power to direct the driver what amount of coal to take, and where and when to take and to deliver it, this evidence, in my opinion, would not have overcome the legal presumption that his general employer, Martin, was liable for his negligence in his method of doing his work, and that the Coal Company was free from liability. But the local manager of the Coal Company testified, regarding this driver and others, that these men were instructed to deliver the coal under the Coal Company's orders:

" 'Q. And the method of delivery is under your orders? A. Yes, sir.

" 'Q. Place, the time, the amount, and all, is under your orders? A. I have said so two or three times.'

"Because this testimony indicates that the control of the method of the performance of the work of protecting the coal hole while the driver was unloading the coal had been transferred by some agreement between his general employer and the Coal Company from the former to the latter, this case seems to me to be taken out from the general rule and presumption which have been stated, and to have been properly submitted to the jury, and for that reason I concur in the affirmance of the judgment."

The controlling distinction thus clearly appears. In Standard Oil Company v. Anderson, 212 U. S. 215, 29 S. Ct. 252, 53 L. Ed. 480, the Supreme Court holds:

That to transfer one in the general service of another to the service of a third person with all its attendant legal consequences, "requires more than the mere fact that the servant is sent to do work pointed out by such third party who has made a bargain with the master for his services. * * *

"He who agrees to furnish the completed work through servants over whom he retains control is responsible for their negligence in the conduct of it, because, though it is done for the ultimate benefit of the other, it is still in its doing his own work. To determine whether a given case falls within the one class or the other we must inquire whose is the work being performed, a question which is usually answered by ascertaining who has the power to control and direct the servants in the performance of their work. Here we must carefully distinguish between authoritative direction and control, and mere suggestion as to details or the necessary co-operation, where the work furnished is part of a larger undertaking. * * *

"The simplest case, and that which was earliest decided, was where horses and a driver were furnished by a liveryman. In such cases the hirer, though he suggests the course of the journey and in a certain sense directs it, still does not become the master of the driver and responsible for his negligence, unless he specifically directs or brings about the negligent act."

In Little, Receiver, v. Hackett, 116 U. S. 366, 6 S. Ct. 391, 29 L. Ed. 652, the holding is that:

"A person who hires a public hack, and gives the driver directions as to the place to which he wishes to be conveyed, but exercises no other control over the conduct of the driver, is not responsible for his acts or negligence."

In cases such as this there must necessarily be co-operation between hirer and hired. Pointing out the direction to be taken is not the giving of orders, but rather of information. Obedience to such direction was not sufficient to show, nor even indicate, a change of masters from the Black Ice & Delivery Company to the Lion Company. Standard Oil Company v. Anderson, supra.

The language of Judge (now Justice) Holmes in Driscoll v. Towle, 181 Mass. 416, 63 N. E. 922, is pertinent:

"The mere fact that a servant is sent to do work pointed out to him by a person who has made a bargain with his master does not make him that person's servant. More than that is necessary to take him out of the rela-

tion established by the only contract which he has made and to make him a voluntary subject of a new sovereign,—as the master sometimes was called in the old books. * * *

"In cases like the present, there is a general consensus of authority that, although a driver may be ordered by those who have dealt with his master to go to this place or that, to take this or that burden, to hurry or to take his time, nevertheless in respect to the manner of his driving and the control of his horse he remains subject to no orders but those of the man who pays him. Therefore he can make no one else liable if he negligently runs a person down in the street."

The test is not necessarily the right to hire and discharge, but whether the servant is engaged in the work of the new master beyond and apart from the incidental purpose of hauling, or carriage. The mere act of performing the work of hauling for which alone in this case the truck with its driver was hired, must not be confused with the general operations of appellant in the oil fields. To hold otherwise would be to make an independent contractor and his servants employees of the third party in practically all cases. A cabman who is hired to carry a passenger does, in a restricted sense, work of and for the hirer, but not in the sense necessary to transfer one in the general service of another to the service of a third person with all its attendant legal consequences. To accomplish this, as the Supreme Court says in Standard Oil Company v. Anderson, supra, "requires more than the mere fact that the servant is sent to do work pointed out by such third party who has made a bargain with the master for his services." In the case at bar the truck of the Black Ice & Delivery Company was hired for the special purpose of conveying the employees of appellant to their place of work in the oil fields. According to the record the representatives of appellant did no more than to give to the driver information as to the route to be taken. With respect to the manner of his driving and the control of his truck he did not represent appellant. In this case he differs in no legal sense from a driver of any public conveyance in which persons are carried for hire.

The court erred in charging the jury, as matter of law, under the undisputed facts in this case, that the driver was the servant of the defendant. Upon those facts we think appellant's motion for a directed verdict should have been sustained, but inasmuch as upon another trial a different record may be presented, the judgment must be reversed,

and the case remanded for further proceedings in accordance with the views expressed in this opinion. It is so ordered.

BOOTH, Circuit Judge (concurring in the result). I agree with my associates that the judgment must be reversed and the case sent back for a new trial, because the majority of this court is of the opinion that the trial court erred in holding as a matter of law that the driver of the truck was an employee of the defendant.

I am unable to concur in the statement in the majority opinion that upon the facts as they appeared upon the trial, the defendant's motion for a directed verdict should have been sustained. The result of the litigation thus far, in my opinion, shows very clearly that the facts appearing upon the trial were such that fair-minded men might honestly draw different inferences as to whether the driver of the truck was an employee of the defendant. That question, therefore, should have been submitted to the jury, and not determined by the court as a matter of law in favor of either party.