## STANDARD OIL CO. OF NEW YORK v. MASCARENHAS.
### No. 2671.

Circuit Court of Appeals, First Circuit.
May 31, 1932.

Francis J. Carney, of Boston, Mass. (John A. Canavan, of Boston, Mass., on the brief), for appellant.

Hubert C. Thompson, of Boston, Mass. (Frank M. Silvia, of Fall River, Mass., on the brief), for appellee.

Before BINGHAM, ANDERSON, and WILSON, Circuit Judges.

ANDERSON, Circuit Judge.

This action of tort brought by Pedro Mascarenhas, the owner of the fishing schooner Hester, in the superior court of Barnstable county, was removed by the appellant, a New York corporation, to the federal District Court for Massachusetts. The trial resulted in a verdict for the plaintiff for $9,000. The appellant makes in this court two contentions:

(1) That there was no evidence for the jury warranting a finding that Poor, through whose negligence the accident was caused, was the agent or employee of the defendant; and

(2) That the plaintiff was, as matter of law, guilty of contributory negligence.

On the afternoon of July 28, 1928, the plaintiff pulled up in Boston Harbor alongside of the oil barge Cambridge Socony, belonging to the Standard Oil Company, for the purpose of taking on a supply of gasoline. Poor, an employee of the defendant, was then in sole charge of this oil barge. Through his negligent handling of the defendant's gasoline filling devices, a substantial quantity of gasoline, perhaps as much as five gallons, was spilled over the deck of the Hester. After about an hour and a half taken for filling the tanks and barrels on the Hester and an attempt to sweep the spilled gasoline off the deck, the plaintiff started up his engine. An explosion followed, destroying the boat and seriously injuring the plaintiff, who jumped overboard in order to put out the flames in which he was wrapped.

The District Court, at the trial on April 15, 1931, submitted special questions to the jury which, with their answers, are as follows:

(1) Was Poor in the employ of the defendant? The jury answer "Yes."

(2) Did Poor act negligently in filling with gasoline the tanks and barrels on the Hester? The jury answer "Yes."

(3) Was the plaintiff negligent in starting the engine of the Hester as and when he did? The jury answer "No."

The fourth and fifth questions and answers referred to damages—not now in question.

The legal results of these findings were carefully argued before the trial court, and on August 18, 1931, judgment was ordered for the plaintiff.

The appellant's main contention was that its barge was in full control of John H. Madden as an independent contractor and that Poor was his agent. The record shows that under date of July 1, 1928, the appellant made a written contract with Madden, which, after reciting that the appellant was "the owner of the boat named 'Cambridge Socony,'" now at anchor in Boston Harbor, and that Madden "desires to act as the agent for the Company for the sale of its products from said Boat in the waters of the harbor of Boston," provides that:

(1) "The Company agrees to and does hereby appoint said John H. Madden its commission agent and authorizes said agent to sell products of the Company from said Boat at such prices as the Company may fix from time to time for cash and on credit to those persons only to whom the Company may authorize the agent in writing to extend credit and only to the extent so authorized.

(2) "The Company agrees to carry in stock on said Boat such quantities of its gasoline, motor oil, kerosene and other petroleum products, as it deems necessary to supply the trade from said Boat, the title to all of which shall be and remain in the Company until sold, with authority in the agent to sell the same upon commission as herein provided.

(3) "The agent accepts said appointment and agrees to serve the Company diligently and faithfully, to operate said Boat, and to conduct and report all sales of the Company's merchandise in strict conformity with the instructions, rules and regulations of the Company; to provide and pay from Agent's own funds all necessary employees; to keep accurate books of account in such manner as the Company may direct, and to account to the Company and at such other times as the Company may require, for all merchandise entrusted by the Company to Agent's care, and for the proceeds of all such merchandise sold."

The sixth paragraph provides:

"The Agent further covenants and agrees for Agent and for the heirs, executors and administrators of Agent, to exonerate, save harmless, protect and indemnify the Compa-

ny from and against any and all losses, damages, claims, suits or actions at law, or otherwise, judgments and costs which shall arise or grow out of any injury to persons (including agent and agent's employees) or property (including Agent's and Company's property) caused by or resulting from the use of said Boat or Tender by the Agent, or the conduct of the Company's business thereon."

The tenth paragraph provides that either party may terminate the agreement on thirty days' written notice, and that the company may "at any time forthwith" "cancel this agreement, and terminate the agency in the event that the Agent, in the Company's judgment, does not fully and satisfactorily perform Agent's obligations hereunder."

█ Madden testified that "the week the accident occurred there was a man working in my place that the Standard Oil put there until the following week"; this man was Charles Poor; "that he had asked permission from the defendant to give him a man until his business picked up. The man furnished him was operating the boat when the accident happened"; that "during the week the accident happened he was on the wharf selling oil to boats for himself; that the only oil he sold was Standard oil, fuel oil; that anybody who came to the wharf at the fish pier looking for gasoline was directed by him to the barge Cambridge Socony"; that "under the agreement between the defendant and himself he sold not only gasoline but motor oils and kerosene; the gasoline he sold from the Cambridge Socony, the fuel oils and kerosene at the fish pier; that the first couple of weeks he worked on the boat, but as he was making more selling the oil than in selling Socony he spoke to a Mr. Zinck, employed by the defendant, and asked him to have them loan him a man for the boat so that he himself might continue at the pier, and this is how the defendant happened to loan him Mr. Poor."

It was plainly a question of fact for the jury whether Poor was, at the time of the accident, acting for the appellant or for Madden. The evidence warranted a finding that at this time the defendant had substituted Poor for Madden under the contract.

█ When Madden wanted to be free to attend to his more lucrative business at the fish pier, he did not seek and find, for himself, a substitute for his agency job at the Cambridge Socony; he applied to the appellant, and the appellant furnished Poor. It certainly cannot be ruled as matter of law that

Poor was furnished as Madden's agent, even if it be ruled that under the written contract Madden was an independent contractor. The evidence warranted, as the court below instructed the jury, a finding that the Standard Oil furnished Poor as a substitute employee, thus suspending pro hac vice its written contract with Madden. Moreover, some significance attaches to the fact that Poor was on there apparently for the week in which the accident occurred; that it was no brief and short life loaning of a man to Madden. The entire business that both Poor and Madden were carrying on was the appellant's business. It was at least with the appellant's approval that Madden, instead of being at the Cambridge Socony, was selling the appellant's oil at the pier.

This aspect of the evidence alone would warrant the jury's finding that Poor was the appellant's agent. It is not necessary to enter upon a critical examination of the written contract between the appellant and Madden. Singer Mfg. Co. v. Rahn, 132 U. S. 518, 10 S. Ct. 175, 33 L. Ed. 440; Standard Oil Co. v. Anderson, 212 U. S. 215, 29 S. Ct. 252, 53 L. Ed. 480; compare Chicago, Rock Island & Pac. R. Co. v. Bond, 240 U. S. 449, 36 S. Ct. 403, 60 L. Ed. 735.

But it may well be noted that, under this contract, Madden was described as the defendant's agent, in charge of its boat, selling its merchandise "in strict conformity with the instructions, rules and regulations of the Company," and subject to immediate discharge on failure, in the company's judgment, satisfactorily to perform his agent's obligations thereunder. It would be difficult to hold that, if the negligence had been Madden's, personally, he could be held, as matter of law, an independent contractor. But the other aspect is enough to require this court to hold appellant's contention untenable.

█ Equally untenable is the appellant's contention that, as matter of law, the defendant had sustained the burden of showing plaintiff's contributory negligence.

The Hester was stocked and prepared to sail for the fishing grounds that night. It could not lie by the Cambridge Socony indefinitely. While the plaintiff knew that gasoline had been spilled over the deck, he also knew that a combing some three inches high prevented the gasoline from going down into the engine room. He testified that he looked and smelled for gasoline before starting his engine. It was for the jury to say whether, under the circumstances, the danger of explosion was so obvious as to make it con-

tributory negligence. This could not be properly ruled, as matter of law.

The judgment of the District Court is affirmed, with interest and costs.