**TIDEWATER GRAIN COMPANY**

v.

**The S.S. POINT MANATEE, her engines, boilers, equipment, etc. and the Point Shipping Corp. and Tug Cavalier, her engines and equipment, etc. and Tug Cape May, her engines and equipment, etc. and Curtis Bay Towing Company of Pennsylvania.**

Civ.A. No. 83–2389

United States District Court,
E.D. Pennsylvania.

Oct. 5, 1984.

John Mattioni, Anthony S. Minisi, Richard W. Hopkins, Philadelphia, Pa., for plaintiff.

Raymond T. Letulle, Maurice J. Maley, Jr., Krusen, Evans & Byrne, Philadelphia, Pa., for Point Shipping Corp.

Alfred J. Kuffler, Stephen M. Calder, Palmer, Biezup & Henderson, Philadelphia, Pa., for Curtis Bay Towing.

## MEMORANDUM OPINION AND ORDER

VanARTSDALEN, District Judge.

In this case Tidewater Grain Company (Tidewater) alleges that the S.S. POINT MANATEE while under tow by tugs owned and operated by the Curtis Bay Towing Company (Curtis Bay) allided with the Tidewater dock. Tidewater seeks compensation for damages to the dock in this action against Curtis Bay and the owners of the S.S. POINT MANATEE, the Point Shipping Corporation.

At the time of the allision the POINT MANATEE was piloted by an employee of Curtis Bay, Jerome Mamo. Curtis Bay and Point Shipping have filed cross motions for partial summary judgment on the issue of which party is liable for any negligence that may have been committed by pilot Mamo. Curtis Bay argues that pilot Mamo was the borrowed servant of Point Shipping at the time of the accident and that Point Shipping, therefore, is liable for any negligence of pilot Mamo as his employer. Point Shipping contends that under its contract with Curtis Bay, or alternatively by operation of law, pilot Mamo remained the employee of Curtis Bay and that Curtis

Bay, not Point Shipping, is liable for any damages caused by pilot Mamo's negligence.

On January 3, 1983, the POINT MANATEE was being towed from Camden to Girard Point by tugs owned and operated by Curtis Bay. The POINT MANATEE was not under its own propulsion, and its own propulsion was not available for use. Certain of her navigation equipment, however, was available and was being used in piloting the ship. In addition to pilot Mamo, two representatives of the owners of the POINT MANATEE, a small shore crew and the ship's master, Dana Dillon, were aboard during the maneuver.

The first question to consider is whether the towage contract between Point Shipping and Curtis Bay determines which party is liable for damages caused by negligence of the pilot. The contract contains a pilotage clause providing that when a tug employee pilots a vessel under its own propulsion or with its own propulsion available the pilot becomes the borrowed servant of the vessel's owners and that they, not the towing company, are liable for any negligence of the pilot.*

■■■ Point Shipping argues that the negative inference of a contract disclaiming liability for negligent pilotage of a ship under its own power is that the towing company is liable for negligent navigation of a ship propelled only by the power of tugs. Ambiguities in the contract should be read in favor of Point Shipping and against Curtis Bay who authored the contract. *Melso v. Texaco, Inc.*, 532 F.Supp. 1280, 1297 (E.D.Pa.), *aff'd*, 696 F.2d 983 (3d Cir.1982). The contract language, however, is not ambiguous. It covers only situations in which the vessel being navigated is "making use of or ha[s] available [its] own propelling power." Neither party contends that the POINT MANATEE was under its own propelling power or that she had that power available. Nor has any evidence been offered to establish the understanding of the parties that the contract was to bear the negative inference propounded by Point Shipping. I therefore find that the contract does not govern the relative liability of Curtis Bay and Point Shipping for any negligence that might have been committed by pilot Mamo. Liability must be determined in accordance with the common law borrowed servant doctrine.

■■■ A person who is employed generally by one employer but is performing a particular service for another employer under the control and direction of the temporary employer becomes the borrowed servant of that temporary employer. *Standard Oil Co. v. Anderson*, 212 U.S. 215, 220–22, 29 S.Ct. 252, 253–54, 53 L.Ed. 480 (1909). Under this borrowed servant doctrine, the temporary employer is vicarious-

---

* The pilotage clause provides in full:

PILOTAGE: We do not furnish pilots or pilotage to vessels making use of or having available their own propelling power, so that whenever any licensed pilot, or a captain of any tug which is furnished to or is engaged in the service of assisting a vessel making use of or having available her own propelling power, participates in directing the navigation of such vessel, or in directing the assisting tugs, from on board such vessel or from elsewhere, it is agreed that he becomes the borrowed servant of the vessel assisted and her owner or operator for all purposes and in every respect, his services while so engaged being the work of the vessel assisted, her owner and operator, and being subject to the exclusive supervision and control of the vessel's personnel. Any such service performed by any such person is beyond the scope of his employment for us and neither those furnishing the tugs or lending any such person, nor the tugs, their owners, agents, charterers, operators or managers shall be liable for any act or omission of any such person. The provisions of this paragraph may not be changed or modified in any manner whatsoever except by written instrument signed by an officer of this company.

With respect to vessels that are not owned by the person or company ordering the tug service, it is understood and agreed that such person or company warrants that it has authority to bind the vessel owner to all the provisions of the preceding paragraphs, and agrees to indemnify and hold us harmless, and also those furnishing the tugs and the tugs, their owners, agents, charterers, operators and managers, from all damages and expenses that may be sustained or incurred in the event and in consequence of such person or company not having such authority.

ly liable for negligence of the borrowed servant. *Id.* In accordance with general principles of respondeat superior, the bases for imposing liability are: (1) that the employee was performing the work of the temporary employer; and (2) that the temporary employer had the right and duty to supervise and control the employee in the performance of the work. These two factors are to be considered in determining the issue whether a person is a borrowed servant. *Id.; Amerada Hess Corp. v. Ogden Saguenay Transport, Inc.,* 1980 A.M.C. 900 (M.D.Fla.1979).

The applicability of the borrowed servant doctrine to towing company employees is not a novel issue. In *Sun Oil Co. v. Dalzell Towing Co.,* 287 U.S. 291, 53 S.Ct. 135, 77 L.Ed. 311 (1932), the Supreme Court enforced the provision in a contract that a pilot provided by a towing company aboard a ship under its own propulsion would become the borrowed servant of the ship's owners. The Supreme Court has limited the applicability of the borrowed servant doctrine to tugboat employees, however, by holding that a towing company could not avoid liability for the negligence of its employees by contractually disclaiming liability or through the fiction of the borrowed servant doctrine. *Bisso v. Inland Waterways Corp.,* 349 U.S. 85, 75 S.Ct. 629, 99 L.Ed. 911 (1955). The Court in *Bisso* distinguished *Sun Oil Co.,* noting that a towing company was not in control of its employee piloting a vessel under its own power. *Bisso,* 349 U.S. at 92–94, 75 S.Ct. at 633–34.

■ It is well established that a tug company employee piloting a dead ship (a ship having no propelling power of its own available) remains the employee of the tug company and does not become the borrowed servant of the owners of the dead ship. *Sturgis v. Boyer,* 65 U.S. (24 How.) 110, 16 L.Ed. 591 (1861); *Compania Maritime Samsoc Limitada v. Moran Towing & Transp. Co.,* 197 F.2d 607, 1952 A.M.C. 1291, 1294 (2d Cir.1952); *Walker v. Tug Diane,* 350 F.Supp. 1388 (D.V.I.1972).

Curtis Bay contends, however, that in the present case because the master of the ship was on board during the towing, because some of the navigation equipment aboard the POINT MANATEE was used and because the shore crew of the POINT MANATEE assisted in the towing, the owners of the POINT MANATEE had sufficient control and direction over the navigation to make pilot Mamo their borrowed servant.

■ It is well established that the ship's master has the legal authority to remove the pilot from control of the ship. *The China,* 74 U.S. (7 Wall.) 53, 67, 19 L.Ed. 67 (1868). It is equally clear that the pilot, and not the master, controls and directs the navigation of the ship. *The Oregon,* 158 U.S. 186, 194, 15 S.Ct. 804, 808, 39 L.Ed. 943 (1895); *The Framlington Court,* 69 F.2d 300, 306 (5th Cir.1934).

In cases in which the ship with a borrowed pilot was under its own propulsion, courts have found that the master had sufficient control to warrant the shipowner's liability for negligence of the pilot. *Sun Oil Co. v. Dalzell Towing Co.,* 287 U.S. 291, 53 S.Ct. 135, 77 L.Ed. 311 (1932); *Amerada Hess Corp. v. Ogden Saguenay Transport, Inc.,* 1980 A.M.C. 900 (M.D.Fla. 1979); *see also The China,* 74 U.S. (7 Wall.) 53, 19 L.Ed. 67 (1868) (ship compelled to take locally licensed pilot was liable for pilot's negligence). But even in such situations where a towing company pilot navigates a ship under its own propulsion with the ship's master aboard, other courts have not hesitated to find that the pilot was in control of navigation and that the shipowner was not liable for negligence of the pilot. *Publicker Indus. v. Tugboat Neptune Co.,* 171 F.2d 48, 50 (3d Cir.1948); *cf. Tankers & Tramps Corp. v. Tugs Jane McAllister & Margaret M. McAllister,* 358 F.2d 896 (2d Cir.1966) (tug owner, not shipowner, liable for negligence of pilot where contract failed to provide that pilot would be borrowed servant).

■ In the present case, it is all the more clear that a master without ship's propulsion is not in sufficient control over

navigation to make the pilot the borrowed servant of the ship's owners. *Cf. The Teaser*, 246 F. 219, 223–24 (3d Cir.1917) (master of tug held to have sole control of navigation, the master of the ship in tow having "no voice" in navigation). A ship without its own propulsion is at the mercy of the tugs towing it, regardless of whether the master is aboard or whether the navigation equipment is operating. In such situations, the master must rely on the pilot provided by the tug company and does not have effective control of navigation of the ship.

The job of navigating a ship that does not have its own propulsion is the job of the tug company. The tug company's employee piloting such a ship is doing the work of the tug company and does not become the borrowed servant of the owners of the dead ship being towed.

█ There is no dispute as to any facts material to the determination of the borrowed servant issue. The POINT MANATEE was a dead ship, and the pilot of a dead ship who is provided by a towing company is not the borrowed servant of the owners of the ship being towed. Several circuit courts have held that "the issue of whether a relationship of borrowed servant existed is a matter of law." *Gaudet v. Exxon Corp.*, 562 F.2d 351, 357 (5th Cir. 1977); *Ruiz v. Shell Oil Co.*, 413 F.2d 310, 314 (5th Cir.1969); *Gudgel v. Southern Shippers, Inc.*, 387 F.2d 723 (7th Cir.1967); *McCollum v. Smith*, 339 F.2d 348 (9th Cir. 1964). As a matter of law, a towing company pilot navigating a dead ship is not the borrowed servant of the owners of the ship being towed. Accordingly, Point Shipping is not liable for any negligence that may have been committed by pilot Mamo.