SHIVERS, Judge.
Jefferson Smurfit Corporation (Smurfit) appeals the summary judgments against it on its action in negligence and breach of contract. Summary judgments were improvident in this case and we reverse on both counts.
Smurfit is in the business of manufacturing corrugated boxes. Smurfit contacted Handi-Man Industrial Temporary Help Service (Handi-Man), which is in the business of providing temporary labor, and requested four temporary workers. Handi-Man did not provide a supervisor and did not supervise any of the work performed by the workers. David Lott, the general manager at Handi-Man, stated in an affidavit that Smurfit had the right to (1) control the work assignments, (2) terminate the employment of the workers with or without cause, and (3) establish work hours, breaks, and lunches. He also stated that Handi-Man pays the workers $3.35 an hour for every hour Smurfit assigned and then Handi-Man bills Smurfit for those hours at $5.50 per hour.
When the four workers arrived at Smur-fit on April 7, Mr. Holton, the floor supervisor, gave them some brooms and told them to sweep up around the outside of a nearby warehouse. Mr. Holton stated upon deposition that he instructed the men that they were not to smoke inside any building. He stated that after the workers began their tasks, he checked on them about every two hours or so.
Later that morning, the nearby warehouse where two of the workers were working caught fire. Holton said that one *31 of the employees told him that Vincent Singleton had thrown down a cigarette or a match in some of the boxes and then had run off.
After a hearing, summary final judgment was entered in favor of Handi-Man on the negligence count, and later on the breach of contract count of Smurfit’s complaint. The court found that “Vincent Singleton, who allegedly negligently discarded a cigarette causing the destruction by fire of Jefferson Smurfit warehouse and its contents, was the borrowed employee of Jefferson Smurfit.”
We agree with Smurfit that the application of the borrowed servant doctrine in Workers’ Compensation cases involving temporary labor lenders does not compel its application here to immunize Handi-Man from tort liability as a matter of law. In Rumsey v. Eastern Distribution, Inc., 445 So.2d 1085 (Fla. 1st DCA 1984) a temporary employee received Workers’ Compensation benefits from the lending employer and also sued the borrowing employer in tort. The court entered summary judgment in favor of the borrowing employer finding that the temporary employee was the borrowed servant of the borrowing employer and thus the borrowing employer was not liable in tort. We affirmed. There are strong policy reasons behind precluding recovery for both tort and Workers’ Compensation when both a lending and borrowing employer may be liable for a particular accident. See Id. at 1086. The instant case does not evoke the same policy compulsion.
The question presented by this case is whether the borrowed servant doctrine applies to a borrowing employer as a matter of law when a borrowing employer seeks damages from a temporary labor service resulting from the tortious acts of a worker supplied by the temporary labor service.
In applying the borrowed servant doctrine to attach liability under the theories of respondeat superior and vicarious liability, the Florida Supreme Court held in Postal Telegraph and Cable Co. v. Doyle, 123 Fla. 695, 167 So. 358 (1936) that
[i]t is competent for a principal to loan or farm out his servant to a third party, and if such third party has complete dominion over the servant, and directs his conduct at all times, he will be held responsible for his derelictions even though the principal is paying his salary; but this rule does not hold good if the principal in any way withholds control over him.
Id. 167 So. at 360. Smurfit asserts that it did not have complete dominion over Singleton because Handi-Man chose Singleton for the job, paid Singleton, and could have pulled Singleton off the job. It asserts that Handi-Man hired Singleton and Smur-fit hired Handi-Man to provide a service.
It sometimes happens that one wishes a certain work to be done for his benefit and neither has persons in his employee who can do it nor is willing to take such persons into his general service. He may then enter into an agreement with another. If that other furnishes him with the men to do the work and places them under his exclusive control in the performance of it, those men become pro hoc vice servants of him to whom they are furnished. But, on the other hand, one may prefer to enter into an agreement with another that that other, for a consideration, shall himself perform the work through servants of his own selection, retaining the direction and control of them. In the first case, he to whom the workmen are furnished is responsible for their negligence in the conduct of the work, because the work is his work and they are for the time his workmen. In the second case, he who agrees to furnish the completed work through servants over whom he retains control is responsible for their negligence in the conduct of it, because, though it is done for the ultimate benefit of the other, it is still, in its doing, his own work. To determine whether a given case falls within the one class or the other we must inquire whose is the work being performed, — a question which is usually answered by ascertaining who has the power to control and direct the servants in the performance of their work.
Standard Oil Co. v. Anderson, 212 U.S. 215, 221, 29 S.Ct. 252, 254, 53 L.Ed. 480, 483 (1909). In this case Standard Oil contracted with a stevedore to load a ship and *32 it provided the stevedore with some of the equipment and the winchman to do so. The winchman was in the general employ of Standard Oil which hired him, paid him, and could discharge him. A gangman and others were employed by the stevedore. The Court found that the winchman, who negligently failed to observe a gangman's signals in the lowering of oil cases into a ship's hold, was the rightful employee of Standard Oil under the facts of the case. The Court stated that the winchman’s obedience with the gangman’s signals was more a cooperation with one large, general task than it was evidence of subordination to the stevedore’s gangman. The Court concluded that “ ‘the mere fact that a servant is sent to do work pointed out to him by a person who has made a bargain with his master does not make him that person’s servant; more than that is necessary to take him out of the relation established by the only contract which he has made, and to make him a voluntary subject of a new sovereign_’” Id. at 226, 29 S.Ct. at 256, 53 L.Ed. at 485 (quoting then Chief Judge Holmes in Driscoll v. Towle, 181 Mass. 416, 63 N.E. 922 (Mass.1902)).
Though Standard Oil is not directly controlling on the instant issue, its instruction guides our conclusion that the question of whether Singleton was under the control and direction of Smurfit, for purposes of applying the borrowed servant doctrine to immunize Handi-Man, was a question that presented a material issue of fact which cannot be disposed of by summary judgment. Cf Baker v. Texas & Pacific R. Co., 359 U.S. 227, 79 S.Ct. 664, 3 L.Ed.2d 756 (1959) (where questions of fact pertaining to the borrowing employer’s direction and control should have been submitted to the jury on the issue of whether the borrowing employer was an “employer” under the Federal Employers’ Liability Act.)
The summary judgments entered on both counts are REVERSED and REMANDED.
ERVIN and JOANOS, JJ., concur.