**Wilfredo RODRIGUEZ DIAZ, Plaintiff,**

v.

**Marcelo SIERRA MARTINEZ, et al., Defendants.**

**Civ. No. 86–1297 (JP).**

United States District Court,
D. Puerto Rico.

Nov. 2, 1990.

Charles A. Cordero, Keith Graffam, Cordero, Miranda & Pinto, Old San Juan, P.R., for plaintiff.

Ricardo Jordán Alvarez, Caguas, P.R., for Marcelo Sierra and Virginia Caraballo.

Iván O. González Cruz, Martínez, Camacho & Laffitte, San Juan, P.R., for Municipio de San Juan.

Efrén T. Irizarry Colón, Arecibo, P.R., for Hosp. San Carlos.

Rafael Fuster Martínez, Ponce, P.R., for Corporación Insular de Seguros (CIS).

Elisa A. Fumero Pérez, Vicente Santori Coll Law Offices, Guaynabo, P.R., for Sun Alliance Ins. Co. (As Ins. of Adm. de Servicios Médicos).

Roberto J. Torres Antomattei, Fiddler, González & Rodríguez, San Juan, P.R., for Hosp. San Carlos in Excess of Policy.

Eugene F. Hestres, Bird Bird & Hestres, Old San Juan, P.R., for CIS as Ins. Carrier of Dr. Francisco Jaskille.

Igor J. Domínguez, Hato Rey, P.R., for CIS as Ins. Carrier of Dr. Rafael Otero.

José Soler, Arecibo, P.R., for CIS as Ins. of Hosp. San Carlos.

ORDER

PIERAS, District Judge.

The Court has before it plaintiff's Motion for Reconsideration of the Court's decision to grant codefendant Municipality of San Juan's Motion for Summary Judgment. The Summary Judgment was based upon the premise that no physician employed by the Municipality attended the plaintiff at the Centro Médico Hospital. At issue is whether the medical resident Dr. Carlos D. García Mangual who attended the plaintiff, was an employee of Municipality of San Juan or was an employee of University of Puerto Rico's Centro Médico Hospital for vicarious liability purposes. The plaintiff alleges that Dr. Mangual was an employee of the Municipality because the Municipality paid his salary. Codefendant Municipality alleges that Dr. Mangual was the employee of the University because the University selected him for the residency program. For the reasons stated below, we grant the plaintiff's Motion for Reconsideration.

I. THE FACTS

We note at the outset, that there is no statutory nor case law which speaks directly to the issue of supervisory liability for actions taken by medical residents who are on rotation at one institution while on salary from another. We must therefore examine the facts of this situation closely in order to apply the most parallel law by analogy. In the instant case, the University of Puerto Rico ("UPR") coordinates a residence program with hospitals in Puerto Rico. The residence program is coordinated through UPR's Centro Médico. UPR

selects applicants for the program. The applicants which UPR selects rotate through a number of the hospitals. The residency program is financed by all the hospitals which benefit from the rotations of the residents.

On December 23, 1981 Dr. Carlos García Mangual was admitted to the residence program in Orthopedics on December 23, 1981. On November 22 and 23 Dr. Mangual was making his rotation at UPR's Centro Médico when he attended the plaintiff. As a joint coordinator of the residency program, the Municipality paid Dr. Mangual's salary.

## II.  LOANED–SERVANT DOCTRINE

Under the common law loaned-servant doctrine "a borrowed servant may be considered the employee of the lender or the borrower or both." *Afonso v. City of Boston*, 587 F.Supp. 1342 (D.Mass.1984). When there is three-party relationship between two employers and one worker, the Court must analyze which employer exerted the most control over a worker, in order to decide where the supervisory liability should rest. But in cases where the three-party relationship arises within a context of a joint operation the analysis of control is distinct. *Kelley v. Southern Pacific Co.*, 419 U.S. 318, 326, 95 S.Ct. 472, 477, 42 L.Ed.2d 498 (1974). A joint operation is defined by two institutions that are closely related and necessarily must be coordinated. *Id.* at 327, 95 S.Ct. at 477. The directions that an immediate administrator might give to a worker in such a context is not equivalent to supervisory control. "The intimations of the B & O that the petitioner might have been given directions by the P & LE baggageman is at most an example of the minimum cooperation necessary to carry out a *coordinated* undertaking, and cannot amount to control or supervision." *Standard Oil v. Anderson*, 212 U.S. 215, 29 S.Ct. 252, 53 L.Ed. 480 (1909) (emphasis added).

Therefore in the instant case, the directions that any UPR Centro Médico administrator may have given to Dr. Mangual did not amount to control or supervision because such cooperation is essential for a residency program to function. Thus the most tangible factor in deciding the issue of supervisory control is the payment of Dr. Mangual's salary. Given the joint control nature of the residency program, the payment of salary factor indicates that Dr. Mangual remained an employee of the Municipality when his services were loaned to UPR Centro Médico for a rotation.

When one large general work is undertaken by different persons doing distinct parts of the same undertaking, there must be co-operation and co-ordination, or there will be chaos. The giving of the signals under the circumstances of this case was not the giving of orders, but of information; and the obedience to those signals showed co-operation rather than subordination, and that is not enough to show that there has been a change of masters. *Anderson*, 212 U.S. at 226, 29 S.Ct. at 256.

Wherefore, in view of the foregoing, the plaintiff's Motion for Reconsideration is hereby GRANTED.