14802

BROWNLEE v. CHARLESTON MOTOR EXPRESS CO., INC.,
*ET AL.* (Two Cases)

(200 S. E., 819)

Messrs. *John I. Cosgrove* and *Nathans & Sinkler,* for appellants,

*Mr. J. D. Parler,* for respondent,

January 6, 1939.

The opinion of the Court was delivered by MR. JUSTICE BONHAM.

It is conceded that the last of the above-named defendants-appellants is incorrectly styled Lloyds America Insurance Company. Its correct name is Lloyds America, and will be so called in this opinion.

The two cases arose out of the same state of facts; were heard together on circuit, and the appeals were heard to-

gether in this Court. The judgment of this Court will apply to both of them.

The actions were brought to recover damages for injuries alleged to have been sustained by the plaintiffs in a collision between a truck and the automobile in which plaintiffs were seated. The automobile was parked on the shoulder of State Highway No. 2, between Summerville and Jedburg, for the purpose of repairing or changing a tire.

The complaint alleges that while the automobile was thus parked a truck and trailer, bearing Highway Department License No. S—4440, drove into it from the rear. The truck and trailer were the property of, or under the control of, the defendant, Charleston Motor Express Company, which is a common carrier for hire and operates a truck line in and through Dorchester County under a class F certificate issued by the South Carolina Public Service Commission, carries on a general transportation business for hire, and operates property-carrying motor vehicles over the highways of the State of South Carolina. That the truck and trailer, the trailer bearing 1936 South Carolina License No. S—4440, was being operated over and upon the truck line of the defendant, Charleston Motor Express Company, Inc., by an agent and servant of the said Charleston Motor Express Company, hauling and transporting freight for hire. The defendant, Lloyds America, is a corporation organized under the laws of the State of Texas; has a place of business in the State of South Carolina, is engaged in the business of insuring trucks, automobiles and motor vehicles for hire in the State of South Carolina, and is the insurance carrier for Charleston Motor Express Company, and its policy covered the Charleston Motor Express Company and its truck and trailer which was operated by said Charleston Motor Express Company on its line at the time of the collision. That on the night of April 28, 1937, while the plaintiff was sitting in the automobile, parked on the right shoulder of Highway No. 2, at the point above named, the truck and trailer ran from the rear with much force into and

upon the automobile occupied by plaintiff, throwing plaintiff from the car, which was demolished, and inflicting upon her severe personal injuries in and upon the face, head, body and limbs. There follows in the complaint nine specifications of negligence on the part of the driver of the truck and trailer, and details of the injuries suffered by plaintiff. The prayer is for $3,000.00.

The defendant, Charleston Motor Express Company, Inc., by its answer, set up a general denial. It specifically denies that it was, at the time of the collision, the owner of, or in possession of, or had under its control, the truck and trailer; and it denies that it is a common carrier for hire, but admits that it operates a truck line under a class F certificate from the South Carolina Public Service Commission, that it owns and operates property-carrying motor vehicles over the highways of the State. Denies the fourth paragraph of the complaint. Admits that it has a public liability and property damage insurance policy with Lloyds America; that said policy was filed according to law, but denies that the defendant truck and trailer were its property or were operated on its truck line; and alleged that the said policy of insurance covered the operation of trucks and trailers engaged in its own business, but did not cover the operation of trucks and trailers not engaged in its business; admits on information and belief the allegations of Paragraph 7 of the complaint as to the collision, but denies that the defendant truck and trailer were being operated by an agent or servant of this defendant.

For further defense: That the plaintiff and the driver of the car in which plaintiff was riding were engaged in a joint enterprise, and sets up the plea of contributory negligence.

For a further defense: There is set up the plea that the defendant truck and trailer were the property of J. Cordray and were being operated by his agent or servant, who was then engaged in the business of the said J. Cordray and were entirely under the management or control of said J.

Cordray, or his agent or servant, and this defendant has no control over or responsibility for the operation of said truck and trailer, which were not engaged in its business.

The defendant, Lloyds America, set up for answer, a general denial: Denies on information and belief that Charleston Motor Express Company, Inc., is now, or was at the time referred to in the complaint, the owner of or had control or possession of the defendant truck and trailer; denies that Charleston Motor Express Company is a common carrier for hire, but admits that it operates a truck line under a class F certificate from the South Carolina Public Service Commission, and that it operates property carrying motor vehicles over the highways of South Carolina. On information and belief, denies the fourth paragraph of the complaint. It sets up that its true name is "Lloyds America." It admits that Charleston Motor Express Company, Inc., has a public liability and property damage insurance policy with this defendant, but denies that the policy covered defendant truck and trailer, and denies that they were the property of, or operated on, the truck line of the defendant Charleston Motor Express Company; it alleges that the liability of Lloyds America is strictly limited to the terms and conditions of said policy of insurance. Sets up the plea of contributory negligence; denies the eighth paragraph of the complaint.

For further defense: That under the terms and conditions of the policy issued by this defendant to the Charleston Motor Express Company, Inc., which is known as a public liability and property damage policy, it was applicable to and covered only certain trucks and trailers therein described, owned by defendant Charleston Motor Express Company, Inc., and operated by it in its business; that the defendant truck and trailer were not owned or operated by Charleston Motor Express Company, Inc., in its business at the time and place mentioned in the complaint; and the defendant truck and trailer were not covered by the said policy, nor any amendment to or endorsement thereto. That at the time

mentioned in the complaint the defendant truck and trailer were not licensed or operated under certificate of public convenience or necessity or permit issued to the Charleston Motor Express Company, Inc., by the Public Service Commission of South Carolina, or the Interstate Commerce Commission, or otherwise under the statutes of South Carolina or the acts of Congress, and this defendant has no liability for the operation of said defendant truck and trailer.

The cases came on for trial before the Hon. E. C. Dennis, Circuit Judge, with a jury, at the May, 1938, term of the Court of Common Pleas for Dorchester County and resulted in verdicts for the plaintiffs in each case in the sum of $3,000.00. Motions for nonsuit, directed verdict and new trial were made and denied.

The defendants appeal upon five exceptions. They raise on behalf of Charleston Motor Express Company, Inc., and Lloyds America the following questions as set out in appellant's brief:

"I. The motor vehicle involved in this cause was not covered under the policy of insurance existing between Charleston Motor Express Company, Inc., and Lloyds America; hence it was error not to dismiss Lloyds America from the case.

"II. Cordray, as the owner and operator of the truck involved herein, was an independent contractor, so that neither of the defendants could be held liable for his tortious acts or those of his servants."

When the appeal in this case was called to be heard in this Court, appellants' counsel moved the Court "to strike from respondents' brief the so-called appendix printed at page 19 thereof purporting to incorporate Rule 50 of the Public Service Commission of South Carolina, and also to suppress and expunge from the record the portions of the argument in behalf of respondents based on said rule and contained in the brief of respondents filed in this case, upon the ground that said Rule 50 of South Carolina Public

Service Commission is not contained in the transcript of record of this appeal, was not in evidence upon the trial of this cause and was not presented to or considered by the trial Judge upon the trial of this cause, * * *."

After argument, the Court took the matter under advisement to be considered in connection with the whole case.

The gravamen of the matter contained in the motion is this: Printed in the record at page 83 is the following entry: "Endorsement for Motor Vehicle Carrier Policies of Incurance for Public Liability and Property Damage Under Section 8511, South Carolina Code, 1932." ·

This endorsement is on the policy of public liability and property damage issued to Charleston Motor Express Company, Inc., which policy was in evidence at the trial of the case as Exhibit "C." It was in effect on April 28, 1937, when the collision occurred.

The endorsement was, in part, as follows: "In consideration of the premium stated in the policy to which this endorsement is attached, the company hereby agrees to pay any final judgment recovered against the insured for bodily injury to or the death of any person or loss of or damage to property of others (excluding injury to or death of Insured's employees while engaged in the course of their employment, and loss of or damage to property of the Insured, and property transported by the Insured designated as cargo), resulting from the negligent operation, maintenance, or use of motor vehicles *which have been licensed and operate under certificate of public convenience and necessity issued to the Insured by the Public Service Commission or otherwise under Sections 8507–8524 of the South Carolina Code of Laws, 1932,* * * *." Italics added.)

The Rule 50 of Order 2115 of the Public Service Commission set out in the appendix of respondents' brief, and which appellants' counsel move to strike therefrom, does not contain the words *"licensed and operate"* as they appear

in the endorsement found on page 83 of the record. And therein lies the kernel of the motion to strike.

Appellants contend that Lloyds America, the insurance carrier for Charleston Motor Express Company, Inc., is not liable in this case for the reason that the motor vehicle, the truck and trailer involved in the collision was not *licensed and operated* at the time of the collision. Respondents contend that the statutes and the rules of the Public Service Commission, promulgated under the authority of the applicable statutes, including Rule 50, do not require that such truck and trailer should have been licensed and operated.

It appears from the record that the policy of insurance involved in the case was introduced in evidence, and that it contains an endorsement in the exact words contained in Rule 50, as set out in the appendix to respondents' brief. That policy is now in the record of the case on file in the office of the Clerk of the Court for Dorchester County. It further appears from the record that the endorsement on the policy was read to the Court and jury at the suggestion of respondent's counsel. W. W. Goodman, Director of the Motor Transport Division of the Public Service Commission, testified concerning the two endorsements on the policy, and as to the F certificate issued to Charleston Motor Express Company, Inc., which authorized the said Motor Express Company to engage in the business of transporting freight for hire, under a class F certificate.

The Public Service Commission is given the power and authority to make rules for the regulation of motor vehicles desiring to engage in the business of transporting freight for hire on the public highways of the State. Such rules have been promulgated by it and are published in the Acts of the General Assembly for 1938. On page 3023 is found Rule 50 which is printed in the appendix of respondents' brief, and which appellants move to strike. The Rule is now a matter contained in the Acts of the General Assembly and the Court may take judicial no-

tice of it. It would seem that the printing of Rule 50 in respondents' brief could work no harm to the appellants; it is immaterial whether it be struck from the brief or not. It is properly before the Court independently of the brief. We think there is no impropriety in printing it therein, and, therefore, the motion to strike is denied.

No issue is before this Court touching the question of the negligence of the driver of the truck and trailer which did the damage complained of. No error is alleged in the charge to the jury.

The first issue submitted to us by the appellant is this: Is the insurance carrier, Lloyds America, exempted from liability under its policy issued to Charleston Motor Express Company, Inc., because the truck and trailer which did the injuries complained of was not licensed?

It appears that the endorsement on the policy, upon which appellants rely to sustain their contention, contains the words "licensed and operate," which in all other respects is in the language contained in Rule 50 of the Public Service Commission's rules and regulations governing the operation of motor vehicles for hire on the highways of the State, which rules and regulations the Commission had full power to enact, and which have the power and effect of laws. Rule 50 does not contain, nor does any other rule or regulation, nor does the other endorsement on the policy, nor any statute, nor part thereof contain the words "have been licensed and operate." It does not matter that the words just quoted appear in the endorsement relied on by the appellants. It cannot alter the plain provision of the law, which does not require that such motor vehicle as is herein involved should be *licensed*.

Where the provisions of the policy run counter to the law, the law must prevail. That is expressly held in the opinion in the case of *Rogers v. Atlantic Life Ins. Co.*, 135 S. C., 89, 133 S. E., 215, 45 A. L. R., 1172, which was written by Mr. Justice, now Chief Justice, Stabler: " * * * When there is conflict between a pro-

vision of the policy and the law, the law must prevail." (Page 221.)

To the same effect is the holding in the case of *Ott v. American Fid. & Cas. Co.,* 161 S. C., 314, 159 S. E., 635, 76 A. L. R., 4. This is the language (page 636) : " * * * We must assume that the policy was intended, not to evade, but to effectuate the purposes of the statute in compliance with which it was filed, and it must be construed in the light of such statute. * * *" Citing *Curtis v. Mitchaelson,* 206 Iowa, 111, 219 N. W., 49; *Edwards v. Fidelity & Cas. Co.,* 11 La. App., 176, 123 So., 162.

This occurs in the opinion of Mr. Justice Stabler in the case of *New York Life Ins. Co. v. Greer,* 170 S. C., 151, 169 S. E., 837, 839 : "A statute making insurance policies incontestable after two years was enacted in this State in 1878 * * *. It was in force when the contested decisions were made, and therefore was a part of the policies involved as effectually as if it had been written therein. * * *"

In the case of *Ott v. American Fid. & Cas. Co., supra,* the following pronouncement of law is found: "Nor do we think the fact that the statute provides that the policy shall contain 'such conditions, provisions, and limitations as the commission may prescribe,' changes the rules of construction or the reasons therefor in any way. The commission, in prescribing the provisions of the policy, had a right to assume that they would be construed in accordance with established principles of law and in view of the purpose of the statute, namely, the protection of the public. * * *"

We do not think that the fact that the truck and trailer which caused this collision and the consequent injuries to plaintiff was not licensed, relieves Lloyds America from liability under its policy.

The Charleston Motor Express Company, Inc., is and was when this collision occurred, operating under a certificate granted it by the Public Service Commission. Under Section 8522 of the Code of 1932, it

is permitted to hire a motor vehicle to make some particular trip, and such motor vehicle is operated by Charleston Motor Express Company under the certificate issued it by the Public Service Commission; and such hired vehicle is not required to be licensed for such service.

When Mr. Goodman, the Director of the Motor Transportation Division of the Public Service Commission, was on the stand, an attorney for appellants put this question to him:

"Q. When you say that a motor carrier has authority to hire a truck in such a case that does not carry a license tag issued by the Public Service Commission is that one of the published rules of the Public Service Commission? A. That is included in the rules. * * * That is a direct provision of law. We operate under Section 8522 of the Code. * * *

"Q. Isn't it true that the Commission has this rule, Rule 70? * * * A. That rule applies only to vehicles—the rule of the Commission could not override a direct provision of the statute."

The exceptions which contend that Lloyds America is exempt from liability in this case because the truck and trailer, which were involved in and resposible for the collision, were not covered by the policy issued to the Charleston Motor Express Company, Inc., because the truck was not licensed, is without merit.

■ The other questions relied upon by the appellants stand upon the proposition that the involved truck and trailer were the property of J. Cordray, who is an independent contractor, and they were not owned by, or in the possession or control of the Charleston Motor Express Company, Inc., at the time of the collision.

It does not need the citation of any authorities in support of the postulate that if there is any testimony of a competent and relevant nature upon the question whether the truck and trailer involved in the collision were in possession of, or controlled or operated by, Charleston Motor Express

Company, Inc., or its agent or servant, it becomes a question for the jury to determine.

That there is such testimony is patent upon even a superficial examination of the record.

The testimony given by Robert Joyner, driver of the truck, is most contradictory. He seemed anxious to please all parties; that makes it the more necessary that his testimony be submitted to the jury for them to determine when he is telling the truth. The morning after the accident he told Deputy Sheriff Smith that he was hauling flour for the Charleston Motor Express Company. Mr. J. C. Lang, Magistrate's constable, testified that Robert Joyner told him the morning after the collision that he was driving drunk and did not know how the accident occurred; that Mr. Doyle owned the truck. Mr. Doyle is the president of the Charleston Motor Express Company, Inc. He details at some length the arrangement which he claims existed between Cordray, the owner of the truck in the collision, and Charleston Motor Express Company, Inc. It is not necessary to analyze all of the testimony; the following may be reproduced from the testimony of Mr. Doyle:

"The Court. Q. This freight that Mr. Cordray hauled for you was that freight that you had controlled and was responsible for? A. Yes, sir.

"Q. That he hauled for you? A. Yes, sir.

"Q. Under the contract of the Charleston Motor Express Company? A. Yes, sir.

"Q. The bill showed that? A. Yes, sir.

"Q. In other words he could not have gone over and gotten that freight and hauled it unless he hauled it in your name? A. Not of the Indiana Flour Company."

There is evidence that Robert Joyner, driving the truck and trailer of which we speak, got the flour from the Indiana Flour Company and receipted for it.

It is idle to recite any more of the testimony. It is fair to appellant to say that there is testimony tending to prove that J. Cordray was an independent contractor, and his

agent or employee was driving the truck at the time of the collision.

It is the divergent testimony on these matters which made it obligatory on the trial Judge to submit them to the jury.

Even if it be found to be true that Charleston Motor Express Company, Inc., hired Robert Joyner, along with the truck from J. Cordray to make this trip, it is plain from Mr. Doyle's testimony that Joyner was under the direction and control of the Charleston Motor Express Company, Inc.

"* * * It is well settled that one who is the general servant of another may be loaned or hired by his master to another for some special service so as to become, as to that service, the servant of such third person, the test being whether, in the particular service which he is engaged to perform, he continues liable to the direction and control of his master or becomes subject to that of the person to whom he is loaned or hired. * * *" 18 R. C. L., 493, Section 3.

"* * * In the case of an oral contract, if there is no material dispute in the testimony, whether the employee is an independent contractor may present a question for the Court; but, where the evidence is conflicting, or where different inferences may be drawn from the testimony concerning the oral contract, the matter is one for the jury to determine." 14 R. C. L., 79, Section 16.

In the case of *Tate v. Claussen-Lawrence Const. Co.,* 168 S. C., 481, 167 S. E., 826, there is found the following (page 829) : "In 14 R. C. L., at page 76 it is stated, quoting from section 13 : 'While in all ordinary transactions the existence of the relation of contractor as between two given persons excludes that of principal and agent, or master and servant, there is not necessarily such a repugnance between them that they cannot exist together, and an employee may be an independent contractor as to certain work and yet be a mere servant as to other work for the same employer. * * *'"

We are satisfied that the trial Judge committed no error in submitting to the jury the question whether, even if Cordray was the owner of the truck and trailer involved herein, and was an independent contractor, was the driver of the truck and trailer at the time of the collision hired by, and operating them in the service of and as the agent and employee of, Charleston Motor Express Co., Inc.?

All exceptions are overruled and the judgments below are affirmed.

MR. CHIEF JUSTICE STABLER and MESSRS. JUSTICES BAKER and FISHBURNE concur.

MR. JUSTICE CARTER did not participate on account of illness.

ON PETITION FOR REHEARING JANUARY 21, 1939

*Per curiam.*

The appellant, Lloyds America, files a petition for rehearing. Counsel for petitioner says therein: "The ground of the petition is that the conclusion of this Court determining the liability of this appellant in the premises rests upon a misconception of the facts and the law."

Then follows a statement of four particulars in which it is alleged that the Court has misconceived the facts. The counsel say: "We can readily see how the Court has arrived at these conclusions of fact because of the confused state of the record and the other proceedings had before the Court on appeal. The record however does not sustain these findings of fact."

We agree with counsel that the record is, in some respects, confused, but it is the record in which counsel for the appellant concurred and upon which the case was heard.

An inspection of it will demonstrate that the findings of fact by this Court are fully sustained by the record.

Counsel argues that because Rule 50 is contained in the printed volume of the Acts of 1938, p. 2023, the rule was not published as a part of the general law until the fall of 1938.

As an appendix to the printed Acts of 1938, p. 2927, there appears the following: "Rules and Regulations Adopted Pursuant to Authority of General and Permanent Laws." Then follow the rules and regulations of the various agencies and instrumentalities of the State authorized by the Act March 26, No. 132, of 1937, p. 174, to adopt such rules and regulations; including those adopted by the Highway Commission regulating motor vehicles. From the record contained in the Acts of 1938, in the above heading, it appears that the rules containing Rule 50 were filed in the office of the Secretary of State, as the Act of 1937 requires, October 5, 1937. Therefore, it was operative and of force in the spring of 1938 when this case was tried.

We have great respect for the opinion of the learned counsel for the appellant, but we are satisfied that our opinion in this case does not "rest upon a misconception of the facts and the law."

The petition for rehearing is dismissed.

MR. CHIEF JUSTICE STABLER and MESSRS. JUSTICES BONHAM, BAKER and FISHBURNE concur.