**AMERICAN FIDELITY & CASUALTY CO. OF RICHMOND, VA., v. ZURICH GENERAL ACCIDENT & LIABILITY INS. CO., Limited, et al.**

Civil Action No. 665.

District Court, W. D. South Carolina, Greenville Division.

March 31, 1947.

Love, Thornton & Blythe, of Greenville, S. C., for plaintiff.

Haynsworth & Haynsworth, by W. Francis Marion, all of Greenville, S. C., for defendant Zurich General Accident & Liability Ins. Co., Limited.

Thomas, Cain & Black, of Columbia, S.C., for defendant M. D. Hicklin Motor Trucker, Inc.

WYCHE, District Judge.

In this action the plaintiff seeks to recover from the defendants the sum of Four Thousand, Five Hundred Dollars ($4,500), the amount paid by the plaintiff as insurance carrier for Reliable Transfer Company, in settlement of an action brought by the administrator of Haskell M. Hite against H. F. Jennings and Reliable Trans-

fer Company for the recovery of damages for the alleged wrongful death of Haskell M. Hite.

In compliance with Rule 52(a) of the Rules of Civil Procedure, 28 U.S.C.A. following section 723c, I find the facts specially and state my conclusions of law thereon, in the above cause, as follows:

### Findings of Fact.

Reliable Transfer Company of Augusta, Georgia, and M. D. Hicklin Motor Trucker, Inc., of Columbia, South Carolina, on February 13, 1945, were both duly licensed by The South Carolina Public Service Commission and the Interstate Commerce Commission as common carriers of freight by motor vehicles. At that time, and as required by State and Federal law, the operations of Reliable were insured against public liability and property damage by the plaintiff American Fidelity and Casualty Company, and the operations of Hicklin were insured against public liability and property damage by the defendant Zurich General Accident and Liability Insurance Company.

The policy of American is written upon what is known as the gross receipt basis, and insures all trucks owned or operated by Reliable in its business, and contains the following provision: "It is further understood and agreed, subject to the conditions of the previous paragraph, that should any other like, valid and collectible insurance issued in the name of the owner or lessor or in favor of the Named Assured herein exist, this policy becomes excess over and above such valid and collectible insurance." The policy of American also contains the following provisions: "It is further understood and agreed that the Named Assured shall furnish the Company on or before the fifteenth (15th) of each calendar month a list of all vehicles including a specific description thereof, owned and hired during the previous calendar month. For purposes of computing the premium to be developed hereunder, the Named Assured agrees to maintain complete and adequate records, and agrees to furnish the Company or its accredited representatives on or before the fifteenth (15th) of each calendar month, a statement of Gross Receipts (whether collected or not) for the previous calendar month, applicable to such owned and hired equipment together with earned premium computed on the basis given below."

The policy of Zurich insures all automobiles owned and operated by M. D. Hicklin Motor Trucker, Inc.

It was the established practice among carriers to lease trucks when they did not have the equipment immediately available to perform the service requested of them by the public. Prior to February, 1945, Reliable had been leasing trucks from Hicklin at regular intervals during the preceding four years under certain stated conditions which provided, among other provisions, that the lessee would have dominion, supervision and control of the equipment during the operation and would insure the leased vehicle for public liability and property damage, as required by law.

On February 13, 1945, the General Manager of Reliable communicated with Hicklin over the telephone and asked to lease one of Hicklin's trucks for the purpose of transporting a cargo of freight from Shaw Field, South Carolina, to Warner Robins Field, Georgia. Hicklin agreed to lease a truck to Reliable under the usual conditions and delivered to Reliable one of its trucks at Shaw Field by H. F. Jennings, one of its drivers, for such use.

When a truck was leased it was the practice of the lessor to furnish the services of a driver and his wages were paid by the lessor and in turn the lessor was reimbursed by the lessee from the proceeds of the trip. It was also the practice for the parties to enter into a written contract or lease confirming the terms and conditions under which the truck was leased. This form of lease was prepared by Hicklin to cover this operation and sent to the General Manager of Reliable at Augusta for signature, where it was duly executed.

During the course of Jennings' journey from Shaw Field to Warner Robins Field the truck driven by Jennings collided with another truck being operated by one Haskell M. Hite in Lexington County, South Carolina, as a result of which Hite was killed. At the time of this accident the written lease had not been actually signed

616

by the General Manager of Reliable but it was signed the next day in accordance with the telephone conversation of the day before.

Jennings returned after the accident to the terminal of Hicklin in Columbia and reported the accident to Hicklin. Hicklin in turn reported the matter immediately to Reliable by telephone and Reliable requested that its insurance agent be notified to investigate the accident. Jennings then proceeded on his way to Warner Robins Field.

The administrator of Hite brought an action against Hicklin and its insurance carrier, Zurich, for the recovery of damages on account of the alleged wrongful death of the intestate Hite. Upon the institution of this suit Hicklin duly notified Reliable thereof and requested Reliable to take over the defense thereof in accordance with the general practice and under the terms of the written lease, it having agreed thereunder to insure the leased vehicle for public liability and property damage. Zurich was not requested to and it did not assume the defense of the case because it was the contention of Hicklin that inasmuch as the lessee, Reliable, had agreed to provide the necessary insurance, Hicklin did not regard the vehicle as being covered by Zurich and no premium was paid to it for coverage for this carriage. Zurich offered to assume the defense of the case if the premiums for this and other similar operations of leased trucks were paid but, as above stated, Hicklin declined to pay the premiums for insurance on trucks while they were leased and under the control of other carriers, and where the other carrier had agreed to provide the insurance required by law. The premium for the insurance to be provided by the lessee was taken into consideration in fixing the compensation to be paid by it for the use of the truck.

While at first the officials of Reliable expressed a willingness to assume the defense of the case and to pay any judgment that might be recovered, its insurance carrier, American Fidelity and Casualty Company, the plaintiff herein, declined to do so on the ground that it was a risk not covered by its contract and as plaintiff refused to assume responsibility, Reliable did likewise, and answer was filed by Hicklin and Zurich in said suit.

Thereafter the question of liability was discussed between the attorneys for Hite's administrator and the attorneys for Zurich and Hicklin, and after some time plaintiff's attorneys agreed to an order dismissing the action against Hicklin and its insurer, which order was duly entered. Later Hite's administrator instituted an action against H. F. Jennings and Reliable Transfer Company for the recovery of damages for the alleged wrongful death of Hite.

Sometime after the institution of the suit by Hite's administrator against Jennings and Reliable, counsel representing American, communicated with one of the attorneys for Hicklin and told him he thought the case could be settled for Forty Five Hundred Dollars ($4,500), and asked if he thought that amount to be reasonable. Counsel for Hicklin replied that, in his opinion, the settlement of a death claim for Forty Five Hundred Dollars ($4,500), would not be excessive and that in the event of future litigation between the two carriers and their insurers to determine the ultimate liability Hicklin would not raise the question as to the reasonableness of the amount, but no other commitment was made with respect thereto. The same position was taken by Zurich.

American, as carrier for Reliable, with the approval of the State Court, then settled that case for Forty Five Hundred Dollars ($4,500), taking from the administrator of Hite the following receipt and release: "The undersigned, T. H. Hentz, as Administrator of the Estate of Haskell M. Hite, deceased, does hereby acknowledge to have received on behalf of Mrs. Haskell M. Hite, widow of the deceased, Forty-five Hundred and no/100 ($4,500.00) Dollars paid by or on behalf of H. F. Jennings and Reliable Transfer Company, in full and final settlement of any and all claims of the said Mrs. Haskell M. Hite against the defendants by reason of the matters and things complained of in the foregoing entitled proceeding." This action was then dismissed and ended by order of a Circuit Judge of the State Court.

Hicklin and Zurich denied liability throughout the entire transaction hereinabove referred to and in no way admitted liability at any time for the accident.

At the time of the accident on February 13, 1945, Jennings was the agent of Reliable; he was acting in the scope of his employment as such agent; he was acting in the furtherance of the business of Reliable; and Reliable had the power to control and direct Jennings in the operation of the truck.

The Lease Agreement executed by Hicklin and Reliable as hereinabove referred to, provided as follows: "Lessee shall have dominion, supervision, and control of the equipment during said trip, and shall insure the leased vehicle for public liability and property damage and cargo insurance, and load and unload the cargo."

Reliable paid the insurance premium to its insurer on trucks leased from Hicklin and others. These premiums were accepted by the plaintiff American and its agents knew that it was the practice of Reliable to lease trucks.

Opinion and Conclusions of Law.

It is well settled that a servant may be in the general employ of another, and nevertheless, with respect to particular or special work, may be transferred, loaned or hired, with his own consent or acquiescence, to the service of a third person, so that he becomes a servant of that person, with all the legal consequences of that relation. Brownlee v. Charleston Motor Express Co., Inc., 189 S.C. 204, 200 S.E. 819; The Standard Oil Co. v. Anderson, 212 U.S. 215, 29 S.Ct. 252, 53 L.Ed. 480.

It will be observed that at the time of the accident Reliable had dominion, supervision and control of the truck which it had leased from Hicklin for the purpose of transporting a cargo of freight from Shaw Field, South Carolina, to Warner Robins Field, Georgia; that Jennings had been transferred or hired to Reliable, with his consent or acquiescence, to perform this special work, was driving the truck for Reliable upon such journey, and was under the control and direction of Reliable in the performance of such particular work. Jennings at the time of the accident was the servant of Relible, with all the legal consequences of such relation. Under such circumstances, if the death of Hite was caused by the negligence of Jennings, the administrator of Hite would have a cause of action against Jennings and Reliable for the wrongful death of Hite, and the plaintiff, as insurance carrier for Reliable, would be bound to pay the amount recovered in such action.

Plaintiff argues that since it settled the action brought by the estate of Haskell Hite it is subrogated to the rights of Hite and also of Reliable. This argument is untenable because plaintiff can claim no higher right than the estate had, and since the estate has released Jennings of all liability it has foreclosed any right plaintiff might have to proceed against Hicklin under the theory of subrogation.

The order of the State Court approves the settlement in the sum of Forty Five Hundred Dollars ($4,500), as a full and just settlement of the amount the plaintiff in the action in the State Court was entitled to receive. There was no reservation of rights by the estate of Hite to sue the defendants for damages in this case. The instrument is a general release and is in consideration of full compensation for the damages claimed in the action brought in the State Court by the administrator of Hite's estate. No right was reserved against any other joint tort-feasor.

A general release of one joint tort-feasor has the effect of discharging all other joint tort-feasors, and a plaintiff may have only one satisfaction, although he has the option of suing joint tort-feasors either jointly or severally. McWhirter v. Otis Elevator Co., D.C., 40 F.Supp. 11; Pendleton v. Columbia Ry., Gas & Electric Co., 133 S.C. 326, 131 S.E. 265; National Bank v. Southern Ry.-Carolina Division, 107 S.C. 28, 91 S.E. 972.

The most that can be said for the plaintiff in this case is that if Jennings was also acting as the servant of Hicklin at the time of the accident and if Hite's death was caused by the negligence of Jennings in the operation of the truck, then Jennings, Reliable and Hicklin would be jointly and severally liable. But even this contention

would not help the plaintiff, for the general principle of law is well settled that one of several wrong-doers cannot recover against another wrong-doer, although he may have been compelled to pay all the damages for the wrong done. It must, therefore, be concluded that Reliable would have had no right whatever to enforce contribution by its joint tort-feasors, Jennings and Hicklin. The right of an insurance carrier is no greater than that of the tort-feasor which it insures. An insurance carrier in paying a claim asserted against its indemnitee and another for the commission of an act for which the latter were jointly and severally liable is not entitled to be subrogated to the rights of the indemnitee as against its joint tort-feasor.

██ The independent liability of plaintiff to insure the truck under its general blanket coverage is settled by Section 8511 of the Code of Laws of South Carolina, which provides that an applicant for a certificate as a motor vehicle carrier must procure and file with the commission liability and property damage insurance, or a surety bond, on such motor vehicle or vehicles to be used in the service. There is no requirement that insurance must be carried on vehicles not being used.

Applying this section to the situation in the instant case it can readily be seen that when the Hicklin truck was leased to Reliable, the truck was then being used in the service of Reliable. Of necessity Reliable had to have a certificate authorizing it to operate a motor vehicle and as soon as it began using the truck in the furtherance of its business, it was incumbent upon it to have the truck properly covered by insurance. As previously pointed out, Hicklin and Reliable entered into a lease agreement whereby Reliable agreed to "insure the leased vehicle for public liability and property damage and cargo insurance".

There is no evidence in this case on the part of the plaintiff to the effect that it at any time refused to accept premiums tendered by Reliable on vehicles leased by it. There is no evidence on the part of the plaintiff that it refused the premium or failed to collect the premium due on Hicklin's truck which was leased at the time the accident occurred. Paragraphs 2 and 3 of the "Hired Car and Gross Receipts Endorsement" attached as a rider to American's policy make it mandatory that Reliable keep proper records with reference to its hired vehicles. These paragraphs are as follows:

"2. It is further understood and agreed that the Named Assured shall furnish the Company on or before the fifteenth (15th) of each calender month a list of all vehicles including a specific description thereof, owned and hired during the previous calendar month.

"3. For the purposes of computing the premium to be developed hereunder, the Named Assured agrees to maintain complete and adequate records, and agrees to furnish the Company or its accredited representatives on or before the fifteenth (15th) of each calendar month, a statement of Gross Receipts (whether collected or not) for the previous calendar month, applicable to such owned and hired equipment together with earned premium computed on the basis given below."

██ If the plaintiff collected the premium due on trucks previously leased from Hicklin it cannot now say that it never agreed to assume the liability.

██ Plaintiff also contends that under the terms of the policy issued by American it is provided that should any other like, valid and collectible insurance issued in the name of the owner or lessor in favor of the named assured exists, then the policy becomes excess, over and above such valid and collectible insurance. This provision or limitation in the policy will not avail the plaintiff here because it is clearly established by the evidence that there was no other insurance on the truck at the time of the accident. The testimony discloses that when a truck was leased under an agreement for lessee to provide insurance, the coverage on such truck was withdrawn from its policy and no premium was paid therefor. The American policy, as shown by the excerpts hereinabove quoted, provides for insurance on leased trucks as well as on trucks owned by the named assured. The plaintiff actually received the premium covering this operation.

■ The plaintiff was under a legal obligation, by virtue of the terms of the policy issued by it to Reliable Transfer Company, to defend the action instituted against H. F. Jennings and Reliable Transfer Company, and to pay any judgment which might be rendered therein, up to the limits of its policy.

Plaintiff has no right of action to recover from the defendants the amount it expended in the settlement of the suit brought by Hite's administrator, because such sum was expended in the discharge of its contractual obligation.

For the foregoing reasons judgment must be for the defendants. Entry of appropriate judgment is directed accordingly.