**AMERICAN SURETY COMPANY OF NEW YORK, Plaintiff,**

v.

**CANAL INSURANCE COMPANY, Defendant.**

**Civ. A. 2100.**

United States District Court
W. D. South Carolina,
Greenville Division.

Dec. 24, 1957.

John P. Mann (Mann & Mann), Greenville, S. C., for plaintiff.

Wesley M. Walker (Leatherwood, Walker, Todd & Mann), Greenville, S. C., for defendant.

WYCHE, Chief Judge.

Prior to the commencement of this action, the plaintiff, as insurer of Johnson Motor Lines, Inc., had defended actions instituted by E. M. Whittenton and J. C. Neighbors against Johnson Motor Lines, Inc. and had paid the judgments rendered in the actions. The judgment rendered in favor of E. M. Whittenton was for property damages in the amount of $11,629.80. The judgment rendered in favor of J. C. Neighbors was for personal injuries in the amount of $5,370.20.

In this action plaintiff seeks to recover from the defendant the amounts expended in payment of these judgments, up to the limits of defendant's policy, and, in addition, the sum of $1,505.73 for expenses in the defense of the actions. Plaintiff amended its complaint by increasing its demands to $11,875.93.

In compliance with Rule 52(a) of the Rules of Civil Procedure, 28 U.S.C.A., I find the facts specially and state my conclusions of law thereon, in the above cause, as follows:

### Findings of Fact

1. Johnson Motor Lines, Inc., on November 3, 1954, was duly licensed and franchised by the Interstate Commerce Commission as a common carrier of freight by motor vehicles. Pursuant to the Rules and Regulations of the I.C.C., the plaintiff filed a certificate of insurance on behalf of Johnson, insuring the operations of Johnson for public liability and property damage. In addition to the I.C.C. filing, plaintiff had filed its certificate of insurance on behalf of Johnson in many of the States along the Eastern Seaboard, including Virginia, North Carolina and South Carolina, pursuant to applicable State law.

2. The defendant had issued its policy of liability insurance to Mary B. Sutherland, d/b/a S & S Produce Company, covering one 1952 White tractor, which policy was in full force and effect on November 3, 1954. Mary B. Sutherland d/b/a S & S Produce Company, was not authorized to engage in interstate commerce by the I.C.C. and no certificate of insurance was required to be filed on her behalf by any State or Federal agency.

3. On November 2, 1954, at the solicitation of agents of Johnson, a written lease agreement was entered into whereby Johnson leased from Mrs. Sutherland the services of a driver and a 1952 White tractor and a trailer to be used to transport merchandise in interstate commerce under the I.C.C. franchise of Johnson from Greenville, South Carolina, to Philadelphia, Pennsylvania. The leased equipment was delivered to the Johnson terminal in Greenville, where it was loaded with the merchandise which Johnson had been employed to transport. When the loading was completed, the doors of the trailer were locked, a seal placed thereon and Johnson's I.C.C. identification device was affixed to the leased equipment. All of the foregoing work was performed by Johnson's employees.

The driver was then given the Driver's Daily Logs, as required by I.C.C., the bill of lading, and directions by Johnson and sent on his way to Philadelphia.

4. Enroute, the leased equipment was involved in an accident which occurred near Fredricksburg, Virginia, in which a tractor and trailer owned by E. M. Whittenton, d/b/a E. M. Whittenton's Transfer, was damaged and the driver J. C. Neighbors received personal injuries. Actions which were instituted in the North Carolina State Courts by Whittenton and Neighbors resulted in judgments being rendered against Johnson. Demand was made by the plaintiff upon defendant to defend these actions. The defendant denied coverage and refused to defend the actions. Subsequently, these judgments were paid in full by the plaintiff.

5. The plaintiff's policy had limits as of November 3, 1954, of $250,000 for each person for bodily injury and a like amount for property damage for each accident. The policy was written upon what is known as the "Gross Receipts Basis" and insured all trucks and equipment used by Johnson in its business. The policy provided for insurance on leased equipment as well as on equipment owned by the named insured and there was no difference or distinction made in the premium charged Johnson by plaintiff as to whether the equipment was owned or leased.

6. The policy of the plaintiff which insured Johnson contained many endorsements, among which was one entitled "Amendment of Comprehensive General-Automobile Liability Policy". Paragraph 7 of this endorsement is as follows: "The insurance for Bodily Injury Liability and for Property Damage Liability with respect to loss arising out of the maintenance or use of any hired automobile shall be excess insurance over any other valid and collectible insurance available to the Insured, either as an Insured under a Policy applicable with respect to the automobile or otherwise." The following provisions are found in the main body of plaintiff's policy under "Conditions": "3. Definitions. * * * (b) Automobiles. The word 'automobile' shall mean a land motor vehicle, trailer or semitrailer, provided the following described equipment shall not be deemed an automobile except while towed by or carried on a motor vehicle not so described: * * * 'Owned automobile' shall mean an automobile owned in full or in part by the named insured. 'Hired automobile' shall mean an automobile used under contract in behalf of the named insured provided such automobile is not owned in full or in part by or registered in the name of (a) the named insured or (b) an executive officer thereof or (c) an employee or agent of the named insured who is granted an operating allowance of any sort for the use of such automobile. 'Non-owned automobile' shall mean any other automobile. * * * 13. Other Insurance. If the insured has other insurance against a loss covered by this policy the company shall not be liable under this policy for a greater proportion of such loss than the applicable limit of liability stated in the declarations bears to the total applicable limit of liability of all valid and collectible insurance against such loss, provided, however, the insurance under this policy with respect to loss arising out of the use of any non-owned automobile shall be excess insurance over any other valid and collectible insurance available to the insured, either as an insured under a policy applicable with respect to such automobile or otherwise."

The policy contains an endorsement entitled "Earning Basis-Truckmen" which contains the following provisions: "It is agreed that such insurance as is afforded by the Policy for Bodily Injury Liability, for Property Damage Liability and for Medical Payments applies with respect to all automobiles, including trailers, other than private passenger automobiles, used for the purposes stated as applicable thereto in the schedule forming a part hereof, subject to the following provisions: 1. Definition of Insured. The insurance does not cover as an insured person or organization, or any agent, employee or contractor thereof, other than the Named Insured, who is required to

carry automobile liability insurance under any motor carrier law. Subject to the foregoing, and subject otherwise to the provisions of the Definition of Insured agreement of the Policy, *the insurance with respect to any automobile hired by the Named Insured applies to the owner of the automoile and any employee of such owner, as insured.*" (Emphasis added.)

The policy contains an I.C.C. endorsement which amends the policy to assure compliance by the insured with Section 215 of the Interstate Commerce Act, 49 U.S.C.A. § 315 and the pertinent rules and regulations of the I.C.C. This endorsement, as well as the endorsements of the States of Virginia, where the accident occurred, North Carolina, where the judgments were obtained, and South Carolina, where the present action was tried, also amends the policy so that insurance coverage is extended to assure protection for any loss resulting from negligence in the operation, maintenance or use of any motor vehicle under the applicable State or Federal certificate of public convenience and necessity, regardless of whether such motor vehicles are specifically described in the policy or not.

7. The I.C.C. Rules and Regulations applicable to the Lease and Interchange of Vehicles by Motor Carriers as contained in Ex Parte No. MC-43, govern the leasing of the equipment by Johnson. Section 207.4 of these Rules is, in part, as follows: "*Augmenting equipment.* Other than equipment exchanged between motor common carriers in interchange service as defined in § 207.5 of these rules, authorized carriers may perform authorized transportation in or with equipment which they do not own only under the following conditions: (a) The contract, lease, or other arrangement for the use of such equipment—* * * (4) Shall provide for the exclusive possession, control and use of the equipment, and for the complete assumption of responsibility in respect thereto, by the authorized carrier, * * *."

8. The defendant's policy on November 3, 1954, had limits of $10,000 for bodily injury for each person and $5,000 for property damage liability. There was no State or Federal law which required a certificate of insurance to be filed on behalf of Mrs. Sutherland or S & S Produce Company, as neither held a franchise or permit from either the I.C.C. or any State public service commission. This policy contained the following pertinent provisions: "12. Other Insurance. If the insured has other insurance against a loss covered by this policy the company shall not be liable under this policy for a greater proportion of such loss than the applicable limit of liability stated in the declarations bears to the total applicable limit of liability of all valid and collectible insurance against such loss; provided, however, the insurance with respect to temporary substitute automobiles under Insuring Agreement IV or other automobiles under Insuring Agreement V shall be excess insurance over any other valid and collectible insurance available to the insured, either as an insured under a policy applicable with respect to said automobiles or otherwise."

"III Definition of Insured. With respect to the insurance for bodily injury liability and for property damage liability the unqualified word 'insured' includes the named insured and also includes any person while using the automobile, and any person or organization legally responsible for the use thereof, provided the actual use of the automobile is by the named insured or with his permission. * * *"

9. The plaintiff has insured Johnson since 1949, and had full and complete knowledge of the fact that Johnson leased equipment for use in its business. Johnson leased 46,494 vehicles from others during the period 1949 through 1954. Plaintiff required that Johnson furnish it all pertinent details concerning the use of leased equipment each month. Plaintiff accepted premiums in the amount of $470,025.00 during 1954, with the knowledge that Johnson leased equipment.

Conclusions of Law

█ A servant may be in the general employ of one, and nevertheless, with re-

spect to particular or special work, may be transferred, loaned, or hired to the service of another, so that he becomes a servant of that person, with all the legal consequences of that relation. Brownlee v. Charleston Motor Ex. Co., Inc., 189 S.C. 204, 200 S.E. 819; Standard Oil Co. v. Anderson, 212 U.S. 215, 29 S.Ct. 252, 53 L.Ed. 480; Brown v. L. H. Bottoms Truck Lines, 227 N.C. 299, 42 S.E.2d 71.

■ At the time of the accident, Johnson had complete dominion, supervision and control of the leased equipment and the leased driver. The driver and equipment were being used exclusively on the business of Johnson, and the lessor Mrs. Sutherland could not have exercised any dominion or control over them. Johnson directed the routes over which the equipment was to be used, how long the driver could drive at a time, what speeds he should maintain and where he could go; further, Johnson required that the driver maintain a log showing the details of the trip. The equipment bore Johnson's I.C.C. identification device and was being operated under its I.C.C. franchise. Under these circumstances the leased or hired driver was the agent and servant of the lessee. Brabham v. Southern Asphalt Haulers Inc., 223 S.C. 421, 76 S.E. 2d 301; American Fidelity & Cas. Co. of Richmond, Va., v. Zurich General A & L Ins. Co., D.C., 70 F.Supp. 613; I.C.C. Rules and Regulations, Section 207.4; Steffens v. Continental Freight Forwarders Co., 66 Ohio App. 534, 35 N.E.2d 734.

It is my opinion that any cause of action arising out of the negligence of such driver would be the responsibility of the driver and Johnson, and the plaintiff, under its insurance policy, would be bound to pay any judgment recovered against either, or both.

■ ■ When the plaintiff paid the judgments in the State Court suits, it discharged its own primary liability, and cannot now recover the *identical amount* which it agreed in its contract of insurance to pay. The plaintiff paid its own liability for the thing against which it had directly insured Johnson when the judgments were paid. It was primarily liable under the policy, and made the payments in recognition of its liability. The rule that an insurer who has paid the loss resulting from a peril insured against may be subrogated to all the claims which the insured may have against any person by whose negligence the injury was caused does not apply in a case where the injury was caused by the negligence of the insured himself. Builders & Mfrs. Mut. Cas. Co. v. Preferred A. Ins. Co., 6 Cir., 118 F.2d 118. In my opinion, this is not a case for subrogation.

■ Plaintiff's contention that the "escape" or "excess" provision of plaintiff's policy, as contained in paragraph 7 of the endorsement, should prevail over and against the "prorata" clause of the defendant's policy, as contained in paragraph 12, cannot be sustained. The prorata provision of defendant's policy must be given effect. Air Transport Manufacturing Company v. Employers Liability Assurance Corporation, 91 Cal.App.2d 129, 204 P.2d 647; Zurich General Accident & Liability Ins. Co. v. Clamor, 7 Cir., 124 F.2d 717; McFarland v. Chicago Exp., 7 Cir., 200 F.2d 5. Plaintiff bases its action upon defendant's policy and is bound by the provisions contained therein. The "prorata" clause of defendant's policy is entitled to as much consideration as the "excess" clause of plaintiff's policy.

Although plaintiff does not seek to have defendant contribute its prorata share of the loss, the defendant set up the "prorata" clause of its policy as a defense. Plaintiff indicated that it was not interested in a recovery based upon proration. However, it is my opinion that the defendant was also an insurer and that the plaintiff is entitled to contribution from the defendant, and that the liability of the defendant should be limited to its prorata share of the loss, as defined and limited in Condition 12 in the defendant's policy issued to Mrs. Mary B. Sutherland, and

It is so ordered.

Having reached the foregoing conclusion it is not necessary for me to pass upon the other questions involved in the controversy.

Counsel may present an appropriate order for judgment accordingly.